PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DENNIS J. FREUDEMAN, INDIVIDUALLY AND AS EXECUTOR FOR THE ESTATE OF DOROTHY V. FREUDEMAN, DECEASED | ) ) ) ) ) | CASE NO.   5:09-CV-00175  JUDGE DOWD |
| Plaintiff, | ) ) | MAGISTRATE JUDGE PEARSON |
| v. | ) ) | **MEMORANDUM OF OPINION** |
| THE LANDING OF CANTON, *et al.*, | ) ) ) | **AND ORDER** **(Resolving ECF No. 77)** |
| Defendants. | ) |  |

This diversity action was filed by Plaintiff, Dennis J. Freudeman, Individually and as

Executor of the estate of the deceased Dorothy V. Freudeman, against Defendants Emeritus

Corporation and Wegman Companies, Inc., the owner and operator of an assisted living facility,

and The Landing of Canton, the assisted living facility, where the decedent resided prior to her

death, alleging negligence, malpractice, and wrongful death, among other things regarding the

death of Dorothy Freudeman.

Plaintiff seeks to compel the production of certain documents pursuant to Federal Rule of

Civil Procedure 37(a).[1] ECF No. 77.  For the reasons provided below, the Court grants

Plaintiff's Motion to Compel and orders Defendants to redact and produce the responsive

---

[1] District Court Judge David D. Dowd, Jr. referred this case to the undersigned
Magistrate Judge for general pretrial supervision.  ECF No. 8.

(5:09-CV-00175)

documents.

## **Introduction**

Plaintiff has moved the Court to compel Defendants to produce "Any and all Medication Error Reports[2] for errors and/or suspected errors made at The Landing of Canton from March 10, 2000 to July 5, 2007 with confidential information redacted." ECF No. 77 at 8. Defendants have objected on the ground that the sought after documents are privileged, as they contain confidential medical information that is protected from discovery by Ohio's physician-patient privilege, codified at Ohio Revised Code § 2317.02. ECF No. 81. Plaintiff replied that the documents requested are not protected by the physician-patient privilege and are more akin to "incident reports" used to record the occurrence of errors made in dispensing medication. While admitting that incident reports meeting certain Ohio statutory requirements are protected under a peer-review privilege, Plaintiff counters that those sought in this case do not fit that profile and, as a result, the peer-review privilege does not apply as well. ECF No. 85. After oral argument, the Court ordered the parties to submit supplemental briefs addressing, among other thing, whether the documents sought should be analyzed according to Ohio's physician-patient or incident report (or "peer-review") privilege statutes and whether the law permits an *in camera*

---

[2] The term "Medication Error Reports" is used by Plaintiff to describe documents used to record errors made in dispensing medication at the facility where the decedent lived. *See* ECF No. 77, at 2 (*citing* ECF No. 77-4, Depo. of Anthony Harris, LPN). As discussed more fully below, at times, Plaintiff's counsel uses the term Medication Error Report interchangeably with the term "incident report" which is a term of art defined by Ohio law. The Court will use "Medication Error Reports" to refer to the documents requested by Plaintiff. The term "incident report" will be used when strictly referring to documents falling within Ohio's statutory definition.

(5:09-CV-00175)

review.[3]  ECF Nos. 89, 92, 93 & 94.

Plaintiff's counsel orally withdrew Plaintiff's request for Medication Error Reports (also "MERs") pertaining to the decedent Dorothy Freudeman after Defendants advised that no such reports "regarding Dorothy Freudeman exist."  ECF Nos. 81 at 3 & 81-1 at 4.  Plaintiff persists, however, in his request for Medical Error Reports related to non-party residents who received medical care and treatment at The Landing of Canton, the facility where decedent lived prior to her fatal illness, alleging the likelihood that such documents would lead to admissible evidence showing Defendant's liability, supporting Plaintiff's claim for punitive damages, establishing prior occurrences, and assisting Plaintiff in assessing the credibility of witnesses.

Defendants cast the issue before the Court as whether information provided by a patient to a nurse for the purposes of medical diagnosis and treatment is undiscoverable and privileged under Ohio's physician-patient privilege and in accordance with Ohio Supreme Court's ruling in *Roe v. Planned Parenthood Southwest Ohio Region,* full cite *infra.*  The Court finds the true question, as formed by the briefing and arguments, is whether information gathered and reported after an incident or accident involving a patient under Defendants' care is privileged.  Defendants have conceded that the information contained in these error reports is not part of the patient's

---

[3]  Plaintiff, in reply to Defendants' opposition brief, for the first time, asserted that the "Medication Error Reports are essentially injury reports" and argued that because the Medication Error Reports are more like injury or incident reports, the controlling Ohio privilege statute is not the physician-patient privilege, but the incident report privilege found at R.C. §§ 2305.25(D) and 2305.253(A).  ECF No. 85 at 2.  Because Defendants had not had an opportunity to respond to this assertion, the Court ordered supplemental briefing regarding both privileges and their applicability to the reports sought.  ECF No. 87.  The parties submitted ECF Nos. 89, 92, 93 & 94.

(5:09-CV-00175)

medical records.  And, Defendants have not shown that this information is used to treat a patient.

Rather, the evidence shows that these reports are used to record *accidents* – things out of the

ordinary – which quite, frankly are, (1) not necessarily in the best interest of the patient, (2)

should not have occurred in the first instance, and (3) should not be repeated.  While it is true

that the recording of an accident or incident may help to diagnose the resulting problem, that

result, it seems, is secondary to the primary reason for which the error reports are created.  To the

extent the error reports contain patient information that is customarily kept private, that

information should be protected.  That, however, is not justification for not disclosing the

balance of the error reports.  For these and the reasons that follow, Plaintiffs motion to compel is

granted.

**Law and Analysis**

**I.  Choice of Law**

Rule 501 of the Federal Rules of Evidence instructs that the determination of whether a

privilege protects certain information from disclosure is to be made in accordance with the State

law that provides the rule of decision as to an element of a claim or defense.  *See, e.g., Jewell v.*

*Holzer Hosp. Found. Inc.*, 899 F.2d 1507, 1513 (6th Cir.1990).  The instant controversy involves

issues of Ohio State law.  The determination of the application of privilege in this diversity

action is, therefore, governed by Ohio law.  In Ohio, both the physician-patient and incident

report (*a.k.a.* peer-review) privileges are governed by Ohio statutes.  *See* R.C. §§ 2317.02 , R.C.

§ 2305.252 & 2305.253, respectively.  As neither privilege is grounded in the common law, each

is limited to its statutory description.

(5:09-CV-00175)

## II. Scope of Discovery

"The scope of discovery is, of course, within the broad discretion of the trial court. An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 402 (6th Cir.1998) (internal quotation marks and citation omitted). Nevertheless, although the district court has discretion in managing discovery, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Id.* at 402. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed.R.Civ.P. 26(b)(1). As the Supreme Court has instructed, because "discovery itself is designed to help define and clarify the issue," the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978). The operative test in determining whether discovery on a particular matter is permissible is "whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence." *Mellon v. Cooper-Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir. 1970).

The party claiming a privilege has the burden of proving that the privilege applies to the requested information. *Svoboda v. Clear Channel Communications, Inc.*, 805 N.E.2d 559, 563, 156 Ohio App.3d 307 (Ohio Ct. App. 6th Dist. 2004) (*citing Waldmann v. Waldmann*, 358 N.E.2d 521, 523, 48 Ohio St.2d 176 (Ohio 1976)). In this case, Defendants assert that the physician-patient privilege, R.C. § 2317.02(B), protects from disclosure the Medication Error

(5:09-CV-00175)

Reports sought by Plaintiff.  Accordingly, Defendants have the burden of proving that the

physician-patient  privilege applies.

The questions of whether the requested documents are privileged and relevant are of

equal importance.  As a threshold matter, an affirmative answer to the question of privilege

permits a party to withhold from disclosure.  Unless relevant, however, the issue of privilege

never arises.  Therefore, the Court first addresses the issue of the relevance of the Medication

Error Reports sought.

### III.  **Relevance**

 Relevant evidence is that which makes the existence of any fact of consequence to the

determination of the action more or less probable.  It is undisputed that Defendants have

represented that no MERs exist for the decedent.  It is less clear whether MERs exist for other

residents at the facility where the decedent lived before her fatal illness.  Thus, a pivotal question

is whether the MERs of non-parties is relevant to Plaintiff's cause of action.

Plaintiff argues that the MERs of non-party residents of the facility where the decedent

became fatally ill are relevant to proving Defendants liability, proving the claim for punitive

damages and prior occurrences, and assessing the credibility of witnesses.  Although Defendants

argue otherwise in their briefs, the undersigned finds that Plaintiff has established the relevancy

of MERs of non-party residents, including those which may reflect or imply medication dosing

errors at or near the time of the onset of the decedent's fatal illness.

Particularly, in Ohio, an award of punitive damages requires proof of actual malice shown

by (1) behavior characterized by hatred, ill will, or a spirit of revenge or (2) extremely reckless

(5:09-CV-00175)

behavior revealing a conscious disregard for a great and obvious harm. *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987). Plaintiff has argued that the second manner of establishing punitive damages – a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm – applies in this case. *Id.* A conscious disregard can be shown in a variety of ways. *Id.* at 335 (citing several cases with different definitions for conscious disregard). "Since punitive damages are assessed for punishment and not compensation, a positive element of conscious wrongdoing is always required." *Preston*, 32 Ohio St.3d at 335. Despite the varying definitions, the Ohio Supreme Court has determined that, minimally, "positive element of conscious wrongdoing is always required." *Id.* "This element has been termed conscious, deliberate or intentional. It requires the party to possess knowledge of the harm that might be caused by his behavior." *Id.* Plaintiffs urge that such a conscious disregard can be shown through the presentation of evidence of similar bad acts – proof that Defendants made errors dispensing medication during the residency of the decedent and, perhaps, gave the decedent an antidiabetic medication intended for another resident.

In response, Defendants claim that no Medication Error Reports exist for the decedent and it is unclear whether those reports exist for other residents. In their recently filed motion for summary judgment, Defendants appear to place a great deal of importance on the lack of MERs stating:

> However, there are a number of established facts in this case. The absence of a medication error report in Dorothy Freudeman's facility chart is an established fact. The absence of a medication error report for any diabetic patient during the month of July 2007 is an established fact. The absence of a medication error report regarding any anti-diabetic medication during July 2007 is an established fact.

-7-

(5:09-CV-00175)

ECF No. 97-1 at 12.

Plaintiff is obligated to present evidence of malice on the part of Defendants before their claim for punitive damages could proceed to the jury.  Thus, Plaintiff's argument that the production of Medical Error Reports relative to others[4] is "reasonably calculated to lead to the discovery of admissible evidence" has merit.  *Mellon v. Cooper-Jarrett, Inc.,* 424 F.2d 499, 501 (6th Cir. 1970); *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978) ("encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case"); *see, e.g.*, *Stephenson v. Upper Valley Family Care, Inc.*, 2008 WL 2404076 at *2 (Ohio 2d Dist. Ct. App. 2008); *Siuda v. Howard*, 2002 WL 946188 at *10-*11 (Ohio 1st Dist. Ct. App. 2002).

Accordingly, unless protected from disclosure by a state law establishing privilege, the reports generically identified as "Medication Error Reports" are relevant and discoverable.  Having found that the requested documents are relevant to Plaintiff's proof of punitive damages claim, the Court does not address the relevance of the requested documents to Plaintiff's proof of liability or assessment of credibility – two other potential uses for the documents.

**IV.  Privilege**

As indicated above, at issue in this case are the application of Ohio's physician-patient and peer-review privileges.

---

[4]  Plaintiffs seek reports for a greater time period than justifiable by the facts  – March 10, 2000 - July 5, 2007.  The parties agree that the decedent was a resident of Defendants' facility from September 2001 to July 2007.  Production is, hereby, limited to the time frame that coincides with the decedent's residency at The Landing of Canton.

(5:09-CV-00175)

### A.  Peer-Review Privilege

The peer-review privilege applies to "[o]nly a document[s] prepared by, or for the use of, a peer review committee [and, thereby] deemed an 'incident report' and [] considered privileged and nondiscoverable."  *Manley v. Heather Hill, Inc.*, 885 N.E.2d 971, 975, 175 Ohio App.3d 155, 161 (Ohio Ct. App. 11th Dist. 2007).

### 1.  "Incident Reports" as defined in Ohio's Law

That a document is referred to as an "incident report," describes an injury or incident, or is merely labeled peer-reviewed or "privileged and confidential" does not automatically invoke the  statutory privilege reserved for those documents that fall within the statutory definition of an "incident report."  *See, e.g.*, *Rinaldi v. City View Nursing & Rehab.*, 2005 WL 3215146, ¶20 (Ohio Ct. App. 8th Dist. Dec. 1, 2005) (labeling documents as "investigation reports" or "incident statements" is insufficient to demonstrate that the reports were incident reports actually prepared for use by a peer review committee"); *Selby v. Fort Hamilton Hosp.*, 2008 WL 2102412 (Ohio Ct. App. 12th Dist. May 19, 2008) (same); *Flynn v. Univ. Hosp., Inc.*, 876 N.E.2d 1300, 1302, 172 Ohio App.3d 775 (Ohio Ct. App. 1st Dist. 2007) (same).  The peer-review statute is codified at O.R.C. §§ 2305.252 & 2305.25.  A party invoking the peer-review privilege must establish that the documents at issue were prepared by or for the use of a peer-review committee of a health-care entity.  *Manley, 175 Ohio App.3d at 160*.

There has been no invocation of the peer-review privilege nor a showing of its application in this case.  Rather, Defendants have conceded that the reports sought are not incident reports and unequivocally state that "[a]t no time during the pendency of this litigation have Defendants

-9-

(5:09-CV-00175)

asserted that the Medication Error Reports constitute 'incident reports' and/or quality assurance

documentation." ECF No. 93 at 3.  While Plaintiff sometimes generically refers to the

documents sought as *incident reports*, he consistently argues the MERs do not meet the minimal

statutory requirement for protection because they were not prepared by or for the use of a peer

review committee.  ECF No. 92.

Because Defendants – the possessor of the documents – do not claim the sought after

documents are protected from disclosure by Ohio's peer-review privilege and none of the indicia

related to peer-review protected documents has been shown, whether the MERs sought are

protected from discovery by the peer-review privilege is a question this case does not present.[5]

## 2. Incident Report Privilege is Distinct from the Physician-Patient Privilege

As noted above, Plaintiffs argue and Defendants concede that the sought documents are

*not incident reports* of the type protected by the peer-review privilege.  The Court, nevertheless,

notes that the peer-review privilege independently co-exists with the physician-patient privilege

statute.[6]  The Peer-Review Privilege is not redundant.  The Court has not found, nor has

---

[5]  After disavowing that the documents sought are incident reports protected from
disclosure by the peer-review privilege, later in the same pleading, Defendants, claim that
"Plaintiff has never requested that Defendants produce 'incident reports' in this matter." ECF No.
93 at 3.  Defendants arguments that Plaintiff has not requested an incident report, *i.e.*, a report of
incidents or occurrences of medical errors, and that they had no opportunity to "object to the
request and to produce evidence establishing that the presumed 'incident reports' were utilized
by the peer review/quality assurance committee" are disingenuous.  ECF No. 93 at 3, 5.

[6]  Ohio Revised Code § 2305.253(B)(3) specifically states that the incident report
privilege does not affect communications between an attorney and a client.  This section allows
the privilege under R.C. § 2305.02(A) to attach to an incident report that is communicated to an
attorney.  *See Flynn*, 876 N.E.2d at 1303.  Importantly, the statute does not mention a similar

-10-

(5:09-CV-00175)

Defendant cited any Ohio cases linking or otherwise associating incident reports or peer-reviewed materials with privileged physician-patient communications.  If the physician-patient privilege could be invoked simply because patient medical information was recorded on a document without more, the incident report/peer-review privilege would be rendered unnecessary because the physician-patient privilege would encompass all patient-related documents.  Most patient-related incident reports, regardless of whether described as a "discrepancy report," "incident report" or "investigation report" contain some patient medical information (even if limited to patient identification).  The very nature of the document requires it.  That content, alone, does not automatically invoke either the physician-patient or peer-review privilege.

The remaining issue regarding privilege is whether the reports are protected from disclosure by Ohio's physician-patient privilege.

### B.  Physician-Patient Privilege

Medical records in Ohio are generally protected from discovery by the physician-patient privilege with certain exceptions.  R.C. § 2317.02(B)(1), (5)(a); *see also Roe v. Planned Parenthood SW Ohio Region*, 912 N.E.2d 61, 70, 122 Ohio St.3d 399 (Ohio 2009); *Hageman v. SW Gen. Health Ctr.*, 893 N.E.2d 153, 155 (Ohio 2008).  Neither party argues that the statutory exceptions to such privilege are applicable to the Plaintiff's request.  *See* R.C. § 2317.02(B)(1)(a)-(e).

Defendants concede that the Medication Error Reports requested by Plaintiffs are not part

_____

affect regarding the communications between a physician and a patient.  The absence of this language indicates that the incident report privilege is not affected by the physician-patient privilege.

(5:09-CV-00175)

of a resident's medical record.  ECF No. 81 at 8.  Nevertheless, Defendants claim the MERs

"constitutes protected health information" that is protected from discovery because that

information was "derived from the resident's medical chart, medication administration reports,

nursing observations and physician orders/communication."  ECF No. 89 at 10.  Defendants

argument that the information is gathered by a nurse, placed on the MER and communicated to a

physician is contradicted by the record before the court.[7]  ECF No. 81 at 8.

      The crux of the dispute is whether the Medication Error Reports are "communications" as

defined by R.C. § 2317.02(B)(5)(a) and, therefore, privileged.      Ohio Revised Code §

2317.02(B)(1) provides, in pertinent part, that any "communication made to [a physician] by a

patient in that relation or the physician's [] advice to his patient" is privileged.

"Communication" is defined by R.C. § 2317.02(B)(5)(a) as follows:

> As used in divisions (B)(1) to (4) of this section, "communication" means acquiring, recording, or transmitting any information, in any manner, concerning any facts, opinions, or statements necessary to enable a physician or dentist to diagnose, treat, prescribe, or act for a patient.  A "communication" may include, but is not limited to, any medical or dental, office, or hospital communication such as a record, chart, letter, memorandum, laboratory test and results, x-ray, photograph, financial statement, diagnosis, or prognosis.

The Ohio Supreme Court recently addressed the issue of the discovery of physician-patient

privileged records of non-parties in *Roe v. Planned Parenthood SW Ohio Region*, 912 N.E.2d 61,

122 Ohio St.3d 399 (Ohio 2009).  The application of *Roe* is discussed more fully later in this

memorandum.

---

    [7]  In *Johnston v. Miami Valley Hosp.*, 61 Ohio State.3d 81, 84-85 (1989), the Ohio Supreme Court ruled that the physician-patient privilege covers patient information gathered by a nurse performing duties to assist a physician in the diagnosis and treatment of a patient.

-12-

(5:09-CV-00175)

### 1.  Content of The Medication Error Reports

Defendants submitted two blank Medication Error Report forms as attachments to their opposition to the motion to compel.  *See* ECF Nos. 81-2 & 81-3.  One form is titled "Event Management Report - Medication Occurrence" with a revised date of "01/06/09" and a footer stating "This information is privileged and confidential."  ECF No. 81-3.  The other form is titled "Medication Occurrence" with a revised date of "07/01/05" and has no footer claiming privilege or confidentiality.  ECF No. 81-2.  Defendants are unclear which form would have been used in this case.  ECF No. 81 at 8 ("Because of the merger between Summerville Senior Living and Defendant Emeritus Corporation, it is unclear as to when Exhibit B was used to record medication errors versus using Exhibit C.").  Because the information elicited on the forms significantly overlap, the Court discusses the pertinent portions of both forms as if one and remarks about relevant distinguishing characteristics only when necessary.

The instructions on the forms state:

- Print or type all events that occur within the community and its surrounding grounds that are medical or non-medical events.[8]  Faxed to Q.S.?  ECF No. 81-3.

- Upon completion of Part I of this form, assess and summarize the report by checking the "Type of Occurrence" and "Reason for Occurrence" in Part II. Circulate the completed form to all individuals listed to obtain their signatures.  Fax copy to Risk Nurse and Pharmacy.  Medication Occurrence File (not in Event Log). ECF No. 81-2.

Information fields on the form to be completed include:

- Resident name, age, mental status, move-in and move-out date

---

[8]  The Court finds it significant that the same MERs are used to record "medical" and "non-medical" event.  This bodes against these forms being categorically privileged.

-13-

(5:09-CV-00175)

- Physician's name
- Date and time of occurrence; type of occurrence; reason or description of occurrence
- Outcome or effect of occurrence
- Response and Treatment, if any
- Vital signs (if state required)
- If the resident was sent to the hospital; hospital name, date and time of transfer
- Corrective action or measures put in place to prevent similar occurrences
- If the resident's physician was notified
- If the resident's family/responsible party was notified and their reaction
- Signature of person finding/reporting the occurrence and person completing the form
- Signature of the Resident Services Director and the Executive Director

ECF Nos. 81-2 & 81-3.

### 2. Evidence before the Court regarding the Medication Error Reports

In support of his motion to compel, Plaintiff has submitted deposition testimony of several individuals who are or were, during the relevant time period, employed by Defendants. Janet Fifield, RN, the Regional Director of Quality Services for Emeritus Corporation who oversaw the Landing of Canton during the time of the alleged incident concerning Ms. Freudeman, provided testimony about the Medication Error Reports.  Ms. Fifield testified that the Medication Error Reports form along with accompanying instructions are contained in the Defendants' policy and procedure manual.  ECF No. 85-2 at 2.  She testified that the resident care director normally fills out the Medication Error Report, but that a nurse may also fill out the form.  ECF No. 85-2 at 3.  She described the report as a means of logging an error and corrective action "put in place to avoid another error."  ECF No. 85-2 at 3.  She testified that the resident care director is to review the report and then fax it to corporate.  ECF No. 85-2 at 3.  She also described the form entitled "Event Management Report – Medication Occurrence," (ECF No. 81-

-14-

(5:09-CV-00175)

3), as an "incident report" for a medication error.  ECF No. 85-2 at 3.

Anthony Harris, LPN, who testified as Defendant Emeritus Corporation's representative described the Medication Error Report as an "internal form used by the community" stating how the medication error event occurred.  ECF No. 77-4 at 2.  Mr. Harris testified that the report is kept in a binder at the facility.  He also testified that if a medication error was reported to him that he would complete a medication error report, notify the physician and family and then make an entry into the medical records.  ECF No. 77-4 at 2.

Linda Daniels, LPN, who was employed at the Landing of Canton during the time of the alleged incident concerning Ms. Freudeman, testified that if she made a medication error at the Landing of Canton that she would notify the doctor and follow his orders, contact the administrator or director of nursing and the family, monitor the resident, fill out the Medication Error Report, and then complete the documentation on the nurses' notes.  ECF No. 92-1 at 2. Ms. Daniels further testified that the nurse making or finding the error would fill out the report and then give it to the supervisor.  ECF No. 85-1 at 2.

Although Defendants have invoked the physician-patient privilege, they have not provided evidence, *via* deposition testimony, affidavits, or copies of operation, policy or procedure manuals.  Defendants rebuttal of Plaintiff's position and support of its claim of privilege is limited to the arguments made in the pleadings and the blank Medication Error Reports.  None of which is sufficient to meet their burden of proving that the physician-patient privilege applies to the requested information.  Most importantly, given that Defendants have conceded that MERs are not part of a patient's record, they have not established that the MERs

-15-

(5:09-CV-00175)

are or represent a communication necessary for a physician to treat or diagnose a patient.

### 3.  The MERs are not Privileged Under R.C. § 2317.02

As noted above, the party claiming the privilege has the burden of proving that the privilege applies to the requested information.  *Svoboda v. Clear Channel Communications, Inc.,* 805 N.E.2d 559, 563, 156 Ohio App.3d 307 (Ohio Ct. App. 6th Dist. 2004) (*citing Waldmann v. Waldmann*, 358 N.E.2d 521, 523, 48 Ohio St.2d 176 (Ohio 1976)).

Defendant urges the Court to focus on "where the information came from which provided the basis for the medication error report." ECF No. 81 at 8.  The statute, however, does not require such a broad lens.  The statute essentially provides that a communication "*necessary to enable* a physician . . . to diagnose, treat, prescribe, or act for a patient"  made to her physician or the physician's advice to her patient is privileged.[9] Ohio Revised Code § 2317.02(B)(1); Ohio Revised Code § 2317.02(B)(5)(a).  Defendants have not met their burden of proving that the reports at issue are "necessary to enable a physician . . . to diagnose, treat prescribe, or act for a patient." In fact, Defendants arguments are unsupported or contradicted by the sworn deposition testimony of Defendants' current or former employees.

Defendants argue:

Plaintiff argues that because the med error reports are kept internally, they are not used for diagnosis or treatment.  This is not the case.  A medication error report is transmitted to the physician, who is usually off-site, in order for the physician to

---

[9]  Moreover, while a document may be protected, other sources of the same information may not be protected.  By analogy, a patient can be compelled to testify about her medical condition and communications with her physician.  Information known by the doctor and contained in the patient's medical records cannot, however, be compelled without certain exceptions.

(5:09-CV-00175)

> receive information regarding the medication and the resident.  It is used to get quick information, rather than sending the resident's entire chart, and is used by the physician to treat the resident.  The physician then gives the nurse orders based on what he sees on the report and what he is told by the nurse, based on her observations of the resident.  Thus, the medication error reports can be used just like the resident's medical records.

ECF No. 81 at 9.  Based upon this recitation which is unsupported by citation, Defendants

conclude, "so long as the information's contemplated use was to treat a patient" it is protected.

ECF No. 81 at 9.  The evidence in support of the motion to compel, establishes that the

Medication Error Report is used within the facility to document medication errors and prevent or

reduce the reoccurrence of such errors, *not* to treat, diagnose, prescribe, or act for a patient.  *See*

*infra* pp. 10-13 (the information contained on the form and deposition testimony).

Defendant has not established that the Medication Error Reports are necessary to enable a

physician to treat or otherwise act for a patient.  Based upon the deposition testimony and the

blank forms submitted, the Medication Error Report is simply a means of documenting a

medication error occurrence or event (*i.e.* an incident).  Both forms submitted by Defendants

prompt that the form should be faxed to either a Risk Nurse, Pharmacy or "Q.S."  Neither,

despite Defendants' statements to the contrary, require distribution to the physician nor the

physician's signature.[10]  The resident care director normally completes the Medication Error

Report, but a nurse may also complete the form.  ECF No. 85-2 at 3.  Specific details concerning

the occurrence are recorded for the resident care and executive director of the facility to review

---

[10]  The Court notes that LPN Harris testified that he would notify a physician, among others, including family. This notification alone does not establish a privileged patient-physician communication.  *See Johnston*, supra.

(5:09-CV-00175)

and then transmit the report to corporate.  ECF No. 85-2 at 3.  The original report is kept in a

binder at the facility.  ECF No. 77-4 at 3.  The medication error is reported to the patient's

physician (the occurrence, not the form or report) and family or responsible party.  ECF No. 77-4

at 2.  A completely separate entry, whatever it may be, is made into the patient's medical records

or into the nurse's notes, which is presumably privileged information.  ECF No. 77-4 at 2.  None

of the evidence before the Court substantiates Defendants' conclusory claim that the Medication

Error Report is transmitted to a physician *and* that the physician uses the report to treat the

patient.  Defendants have not met their burden to prove that the physician-patient privilege

applies to the Medication Error Reports.  The Court finds the Medication Error Reports are not

physician-patient communications as defined by R.C. § 2317.02(B)(5)(a).  Accordingly, the

Medication Error Reports are not protected pursuant to R.C. § 2317.02(B)(1) and as discussed

below, the Ohio Supreme Court's decision in *Roe v. Planned Parenthood SW Ohio Region* does

not apply to the instant case.

### C.  *In Camera* Review

Defendants claim an *ex parte in camera* inspection "is not necessary since the requested

error reports cannot be produced, disclosed or divulged" due to privilege.  The Court agrees

based upon a different reasoning.  *In camera* review is not necessary because the Court has

already reviewed the forms to be produced.  From this review the Court has identified those

categories likely to contain protected information that should be redacted to maintain

confidentiality.  Defendants' argument that the documents are beyond reach simply because they

contain confidential information is without merit.

(5:09-CV-00175)

Plaintiffs cited several cases in which Ohio courts conducted *in camera* reviews before deciding whether to order production.[11]  In each of those cases, the Ohio appellate courts placed the burden on the privilege invoking party to produce evidence of whether the reports met the statutory definition of an incident report under R.C. § 2305.25(D).  If the party did not meet that burden, then the appellate court found that the  privilege did not attach to the report.  In the cases in which production was ordered, the produced documents surely must have contained some of the patient medical information that is typically protected or considered private.[12]  The Medication Error Reports in the instant case are very similar to the reports in these cases.

In *Rinaldi v. City View Nursing & Rehab.*, 2005 WL 3215146 (Ohio Ct. App. 8th Dist. Dec. 1, 2005), a case factually similar to the instant matter in that no evidence was presented to show the documents sought were protected by a privilege, the decedent's estate sued the facility where the decedent had lived many years before her untimely death was caused by falling down a flight of stairs.  The estate sued the facility for  negligence, fraud and wrongful death, among other things, for leaving the decedent (who suffered from dementia unattended) and was later found dead in a pool of blood in a stairwell.  The estate requested documents identified in the defendant

---

[11]  The Court disagrees with Plaintiff's claim that an *in camera* review is required. Without a doubt an *in camera* review may be necessary when insufficient evidence has been provided to permit the Court to make a determination on privilege.  *See, e.g.*, *Rinaldi*, 2005 WL 3215146 *3 (ordering incident reports to be produced after *in camera* inspection).

[12]  *See* *Cook v. Toledo Hosp.*, 862 N.E.2d 181, 169 Ohio App.3d 180 (Ohio Ct. App. 6th Dist. 2006) (summary); *Manley v. Heather Hill, Inc.*, 885 N.E.2d 971, 175 Ohio App.3d 155 (Ohio Ct. App. 11th Dist. 2007); *Flynn v. Univ. Hosp., Inc.*, 876 N.E.2d 1300, 1302, 172 Ohio App.3d 775 (Ohio Ct. App. 1st Dist. 2007); *Selby v. Fort Hamilton Hosp.*, 2008 WL 2102412 (Ohio Ct. App. 12th Dist. May 19, 2008); *Ward v. Summa Health Sys.*, 920 N.E.2d 421, 184 Ohio App.3d 254 (Ohio Ct. App. 9th Dist. 2009).

(5:09-CV-00175)

nursing home's privilege log as Investigation Report Form, Supervisor's Monitor Accident/Incident Report, Employee Written Incident statements and Accident/incident Report & Resident Fall Investigation Reports. *Rinaldi*, 2005 WL 3215146, at *1. After conducting an *in camera* review, the trial court ordered the production of the documents from which the defendant appealed asserting that "the documents are incident reports protected by R.C. 2305.253." *Id.* at *2. The appellate court affirmed the trial court's order to produce the documents because the defendant "presented no evidence . . . indicating that the records were prepared by or for the use of a peer review committee." *Id.* at *3. Although, in *Rinaldi*, the defendants asserted the peer-review not the physician-patient privilege, that Court's use of an *in camera* review is still instructive. Ultimately, the law does not require or prohibit an *in camera* inspection in a case such as that presented here where Defendants have forecast the types of forms and information at issue. This level of detailed information was not available to the court in *Rinaldi*, thus necessitating the *in camera* review.

**D. Redaction**

In July of 2009, the Ohio Supreme Court ruled that confidential medical reports are protected from disclosure even when redacted. *Roe v. Planned Parenthood SW Ohio Region*, 912 N.E.2d 61, 72, 122 Ohio St.3d 399, 409 (Ohio 2009) ("Redaction of personal, identifying information does not remove the privileged status of the records."). *Roe* is easily distinguishable from the instant matter because, in the first instance, the parties and Court, in *Roe*, agreed that the documents sought were medical records protected from discovery by the physician-patient

-20-

(5:09-CV-00175)

privilege.[13]  R.C. § 2317.02.  The Roes, parents of a 14 year-old who had been given an abortion

without the knowledge or consent, wanted the Court to make an exception given the

circumstances of their case.  The parents believed their interest in learning whether other minor

children had also received abortions under circumstances similar to their daughters created a

public interest exception – "a right to obtain nonparty confidential medical information."  *Roe v.*

*Planned Parenthood SW Ohio Region*, 912 N.E.2d at 71.

The instant case is markedly different in that neither party argues that the Medication

Error Reports are medical records.  In fact, Defendants clearly state "the MERS are not part of the

resident's medical record."  ECF No. 81 at 8.  The Court has found nothing to discourage

agreement with this admission.

The Medication Error Reports are not deemed confidential medical records simply because

they may contain patient information that is typically kept confidential.[14]  Evidence has

--------

[13]  *Roe* also involved a request for confidential abuse reports.

[14]  It is well established that facts *underlying* that which is privileged are not necessarily
protected themselves.  For instance, privilege does not protect against discovery of the underlying
facts contained in an attorney-client communication.  *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96
(1981) (noting that non-privileged documents do not become privileged solely by virtue of being
transmitted to counsel).  "[I]t is clear that when an attorney conveys to his client facts acquired
from other persons or sources, those facts are not privileged."  *Antoine v. Atlas Turner Inc.*, 66
F.3d 105, 110 (6th Cir. 1995); *see also Minebea Co., Ltd v. Papst, ,* 228 F.R.D. 13, 19 (D.D.C.
2005); *Kansas Wastewater, Inc. v. Alliant Techsystems*, 217 F.R.D. 525, 528 (D.C. Kan. 2003)
(finding privilege does not apply to facts that an attorney communicates to her client); *United
States v. Savage*, 819 F.2d 1139 (4th Cir. 1987) (finding the privilege does not protect an
attorney's statements to his client when the attorney is only acting as a conduit).  Further, unless
the document itself is protected under another privilege, transfer by a client to an attorney of an
independent or pre-existing document (such as business records, letters, memos, e-mails, or other
items from the client's business or business files) that was not created for or because of (or that
do not arise out of) the attorney-client relationship or consultation, does not bring the document

(5:09-CV-00175)

established that the Medication Error Reports at issue are a means for Defendants to internally

document medication errors and prevent or reduce the reoccurrence of such errors.  The record

shows that the reports at issue may contain confidential as well as non-confidential information,

none of which is a communication between a patient and physician.   Accordingly, Medication

Error Reports are not *per se* protected by Ohio's physician-patient privilege.

Like the Roes, Defendants seek to expand an existing statutory privilege.  As, the

physician-patient privilege did not exist at common law, *State Med. Bd. Of Ohio v. Miller*, 44

Ohio St.3d 136, 140, 541 N.E.2d 602 (Ohio 1989), it is purely a statutory construction of  the

Ohio Assembly "in derogation of the common law" and "must be strictly construed against the

party seeking to assert it." *Id.*  Defendants have not shown that the Ohio Supreme Court or any

lower state court has extended the boundaries of the physician-patient privilege to protect all

private information wherever it may be found.[15]

In *Roe*, the Court found that redaction was not sufficient because the documents were

categorically "confidential" and redaction did not "divest" the records of that confidential status.

In this case, there is no prior confidential status to preserve so redaction is entirely appropriate.

Defendants reliance on *Roe v. Planned Parenthood SW Ohio Region* is misplaced.

_____

within the attorney-client privilege.  Rather, such a document is regarded as existing
independently of the relationship and not as communications made pursuant to it.

[15]  For example the physician-patient privilege prevents a physician from revealing
information that the patient may freely share. *Ward v. Summa Health Sys.*, 920 N.E.2d 421, 430
(Ohio 2009).  More importantly, the patient can be compelled to testify about matters that a
physician cannot reveal. *Id.* (Explaining that "the physician-patient privilege has no common-
law roots to protect the patient's testimony" like the attorney-client privilege).

(5:09-CV-00175)

**<u>Conclusion</u>**

For the foregoing reasons, the Court finds that the Medication Error Reports are not privileged pursuant to Ohio's physician-patient privilege.  The peer-review privilege is not at issue.  Plaintiff's Motion to Compel is granted.  ECF No. 77.

Accordingly, Defendants must produce the requested Medication Error Reports from January 2003 through July 2007 – the undisputed period during which Ms. Freudeman was a resident at The Landing of Canton) -- no later than June 4, 2010 at 4 p.m.[16]  *See* ECF Nos. 15 (Amended Complaint, ¶ 7) & 17 (Answer to Amended Complaint, ¶ 7).

Prior to production, Defendants must redact the following information prior to producing the Medication Error Reports:

1)  Patient's name; age; move-in and move-out date; room or apartment number;

2)  Name of patient's physician; name of patient's family/responsible party;

3)  Vital signs (if applicable); name of hospital (if transferred); date of transfer;

4)  Any other identifying information similar to that described immediately above.

Because the parties have each submitted motions for summary judgment, ECF Nos. 97 & 104, each party may submit a revised version of the previously filed motion for summary judgment or a related pleading incorporating any medical error report produced pursuant to this order, if appropriate.  No other modifications to the motions are permitted.  The revised motion must be filed no later than June 11, 2010 at 4 p.m.  To the extent additional pagination is required,

---

[16]  *See also* footnote 4.

(5:09-CV-00175)

each side may exceed the pages permitted by Rule by no more than 3 double-spaced pages

displaying 12-font typeface.


        IT IS SO ORDERED.


  May 31, 2010                                      _s/ *Benita Y. Pearson*_
Date                                             United States Magistrate Judge