IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **DENNIS J. FREUDEMAN, INDIVIDUALLY AND AS EXECUTOR FOR THE ESTATE OF DOROTHY V. FREUDEMAN, DECEASED** | **CASE NO.: 5:09 CV 175** <br><br> **JUDGE DAVID D. DOWD, JR.** |
| Plaintiff, | |
| vs. | **PLAINTIFF'S HEARING BRIEF ON ATTORNEY FEES** |
| **THE LANDING OF CANTON, et al.** | |
| Defendants. | |

On September 1, 2011, the jury of ten determined that Defendant Emeritus Corporation's ("Emeritus") negligence and violation of the Ohio Patient's Bill of Rights had proximately caused injuries to and the death of Dorothy V. Freudeman. The following day, the same jury found that Defendant Emeritus is liable for damages in the amount of $1,930,000.00 plus attorney fees. The jury's verdict is comprised of $1,250,000.00 in punitive damages, based upon the jury's finding that Defendant Emeritus "acted with malice with respect to the wrongful administration of medication to Dorothy Freudeman by manifesting a conscious disregard for the rights and safety of the residents at The Landing of Canton."[1] The jury further found that Plaintiff's counsel is entitled to attorney fees.[2]

Plaintiff respectfully requests that this Honorable Court award it $772,000.00 in attorney fees, which is equivalent to the contingency fee agreement that Plaintiff executed with its legal counsel. Said fees are appropriate in light of the fact that standard hourly compensation and costs over the three year period without any lodestar adjustment would result in attorney fees of over $550,000.00. Awarding attorney fees based on the contingency fee agreement is reasonable when the following factors are

---

[1] Jury Interrogatory No. 7.
[2] Jury Interrogatory No. 8.

1

considered:

- This case was in litigation for two years and seven months;

- The difficulty of the case which required Plaintiff's counsel to overcome the rigorous defenses asserted by the three separate law firms, who identified seven attorneys as counsel of record representing Defendant.

- Plaintiff's counsel received no compensation for services rendered during the three year period in which professional services were rendered.

- Plaintiff's counsel assumed the responsibility and risk of prosecuting Plaintiff's claims without any guarantee that they would be compensated for their professional services.

- Plaintiff expended over $550,000.00 in legal fees and expenses over the last several years, based on conservative hourly rate computations, before any upward adjustments warranted under lodestar principles.

- The complexity and novelty of the claims; and

- The public good that is likely to result from the case.

Further support for this amount is included in the attached memorandum.

Respectfully submitted,

*/s/ Megan J. Frantz Oldham*
Lee E. Plakas (0008628)
Megan J. Frantz Oldham (0079378)
**TZANGAS, PLAKAS, MANNOS & RAIES, LTD.**
220 MARKET AVENUE SOUTH
EIGHTH FLOOR
CANTON, OH  44702
Telephone:    (330) 455-6112
Facsimile:    (330) 455-2108
Email:        lplakas@lawlion.com;
              mfrantzoldham@lawlion.com
**Attorneys for Plaintiff**

**MEMORANDUM IN SUPPORT**

I.  **Summary of Facts: A jury of ten unanimously found that Defendant Emeritus acted with actual malice and that attorney fees should be awarded to Plaintiff's counsel.**

The jury returned a unanimous verdict in favor of Plaintiff rendering compensatory damages of $680,000.00 to Plaintiff and the statutory heirs of Dorothy V. Freudeman. Additionally, the jury found that Defendant Emeritus:

> **[A]cted with malice** with respect to the wrongful administration of medication to Dorothy Freudeman by **manifesting a conscious disregard for the rights and safety of the residents at The Landing of Canton who might be harmed by the wrongful administration of medication**[.][3]

Accordingly, the jury unanimously awarded punitive damages of $1,250,000.00 to the Estate of Dorothy Freudeman and awarded attorney fees to "counsel employed by the Plaintiff in the prosecution of this action."[4]

II. **Law and Analysis**

    **A. Standard for Computing Attorney Fees**

A trial court may award "reasonable attorney fees" to a plaintiff who prevails on a claim of punitive damages. *Kava v. Boesch*, 2011-Ohio-617, ¶5, citing *Zoppo v. Homestead Ins. Co* (1994), 171 Ohio St.3d 552, 558. The appropriate amount rests within the sound discretion of the trial court. *Id.*, citing *Bittner v. Tri-Cty. Toyota, Inc.* (1991), 58 Ohio St.3d 143.

In determining the amount of reasonable attorney fees, the "most useful **starting point**" for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate; the product of these two numbers is the "lodestar." *Bittner*, 58 Ohio St.3d 144-45; see also *Hensley v. Eckerhart* (1983), 461 U.S. 424, 433. (Emphasis added). This calculation "provides an objective basis on which to make an **initial estimate** of the value of a lawyer's

---

[3] Jury Interrogatory No. 7. (Emphasis added).
[4] Jury Interrogatory Nos. 7 and 8.

services." *Bittner*, 58 Ohio St.3d at 145, citing *Hensley*, 461 U.S. at 433. Significantly, the lodestar calculation "does not end the inquiry." *Id.*, citing *Hensley* at 434. (Emphasis added). Other factors must be considered that may lead the court to "adjust the fee upward or downward." *Id.*

The additional factors to consider when awarding attorney fees are:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3. The fee customarily charged in the locality for similar legal services;

4. The amount involved and the result obtained;

5. The time limitation imposed by the client or by the circumstances;

6. The nature and length of the professional relationship with the client;

7. The experience, reputation, and ability of the lawyer or lawyers performing the services; and

8. Whether the fee is fixed or contingent.

*Bittner v. Tri-County Toyota, Inc.* (1991), 58 Ohio St. 3d 143, citing DR 2-106(B), superseded on Feb. 1, 2007 by Rules of Professional Conduct, Rule 1.5. Additionally**,** litigation costs and attorney fees incurred after the judgment should be considered when awarding attorney fees. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 41.

### B. The factors for computing attorney fees weigh in favor of adjusting the lodestar calculation upward.

#### 1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service weigh in favor of adjusting the lodestar calculation upward.

There is no doubt that this litigation was factually and legally complicated. Specifically, this case involved, but is not limited to, the following:

- Review and evaluation of over 4,400 pages of medical records;

- Preparation and taking/defending of twenty-three depositions, including three expert witnesses;

- Drafting, responding, and/or replying to significant motions, including two separate briefings of cross motions for summary judgments, motions to strike, and motions in limine;

- Discovery disputes regarding depositions, Medication Error Reports, and medication documents from SeniorMed;

- Preparation of expert witnesses for trial; and

- Ten days of trial.

**2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer weighs in favor of adjusting the lodestar calculation upward.**

This case was in litigation for two years and seven months. The trial in this case lasted ten days, and required the time, skill, and efforts of two attorneys and a paralegal throughout the entirety of the trial, including weekends and evenings, as well as the services of a nurse attorney who observed and assisted during significant portions of the trial. As a result of the representation of Plaintiff in this case, Plaintiff's counsel was, to a large extent, precluded from representing other clients during the time period of the trial and during significant periods of time leading up to the trial. This was apparent to Plaintiff, as Plaintiff's counsel made this case a top priority throughout the pendency of the case.

**3. The fee customarily charged in the locality for similar legal services weighs in Plaintiff's favor.**

If necessary, expert testimony will show that the hourly fee rates charged by the attorneys and staff throughout this litigation are reasonable. As fully detailed on page 65 of the Fee Invoice, attached as **Exhibit 1,** the hourly rates of attorneys Lee Plakas, Megan Frantz Oldham, and Cheryl Lee (nurse attorney), respectively, are $375.00, $240.00, and $195.00.

### 4. The amount involved and the result obtained weighs in favor of adjusting the lodestar calculation upward.

The jury unanimously found that Plaintiff was successful against Defendant Emeritus Corporation in his wrongful death claim and unanimously awarded compensatory damages of $680,000.00 and punitive damages of $1,250,000.00 plus attorney fees.  Further, the award of punitive damages and attorney fees is predicated upon the jury's unanimous finding that Defendant Emeritus "acted with **malice**" and manifested a "**conscious disregard for the rights and safety of the residents at The Landing of Canton who might be harmed by the wrongful administration of medication**." This verdict serves as the jury's message to Defendant Emeritus and to other corporations that own assisted living facilities that appropriate rules and protocols for administering medications should be established and enforced, adequate staffing provided, appropriate medication cart organization enforced, appropriate resident treatment records compiled and preserved, and that prompt and appropriate investigations be conducted, documented, and retained regarding serious injury events to residents.  This message serves a significant public interest and has the potential to have a far-reaching effect on those who own and operate assisted living facilities.  Plaintiff successfully challenged the way assisted living facilities are operated in Stark County – and should be awarded accordingly.

Additionally, "when the Plaintiff has achieved excellent results, the Court should award the attorney a fully compensatory fee," and that fee "should not be reduced 'simply because Plaintiff failed to prevail on every contention raised in the lawsuit.'"  *Hensley*, 461 U.S. 434.  Thus, the directed verdicts rendered in favor of Defendants Wegman Companies, Inc. and Wegman Family (Canton) LLC VI should have no bearing on the Court's determination of reasonable attorney fees.

### 5. The time limitations imposed by the client or by the circumstances weigh in favor of adjusting the lodestar calculation upward.

Throughout the pendency of this case, numerous time limitations were imposed upon Plaintiff's

counsel by both the parties and the Court. As discussed *supra*, this case was time and labor intensive for the parties and the Court, involving two years and seven months of litigation, extensive discovery, the taking of approximately twenty-three depositions, numerous pretrial motions, and a two-week jury trial.

> **6. The experience, reputation, and ability of the lawyers performing the services weighs in favor of the adjusting the lodestar calculation upward.**

The prosecution of Plaintiff's claims involved the skills of attorneys Lee Plakas, Megan Frantz Oldham, and Cheryl Lee.

Attorney Plakas is the Managing Partner at Tzangas, Plakas, Mannos, & Raies, Ltd. He has been involved in well over a hundred civil jury trials during his career in both state and federal courts in his 35-year legal career. He is board certified by the National Board of Trial Advocacy as a Civil Trial Specialist, certified by the American Board of Trial Advocates and has been named a "Super Lawyer," an Avvo "Top Lawyer," and is included in the "Best Lawyers in America." The *curriculum vitae* of Attorney Plakas is attached hereto as **Exhibit 2.**

Attorney Frantz Oldham an Associate whose practice focuses on wrongful death, personal injury, and medical malpractice litigation. She was named a "Super Lawyer Rising Star" in 2010 and 2011. She has appeared before numerous state courts, and successfully briefed and argued appeals in the Fifth District of Ohio. The *curriculum vitae* of Attorney Frantz Oldham is attached hereto as **Exhibit 3.**

Attorneys Plakas and Frantz Oldham have significant experience in personal injury and wrongful death cases. As recently as January, 2011, Attorneys Plakas and Frantz Oldham received a jury verdict in the amount of over $1 million for the wrongful death of a 69 year-old nursing home patient.

Attorney Lee's hours were limited to the medical and nursing care aspects of this litigation. Her specialized knowledge was an efficient and effective resource. Attorney Lee graduated with honors from Youngstown State University, obtaining degrees in nursing and health care management. Prior to graduating from law school at the University of Akron in 2000, Attorney Lee's nursing career included

acute care nursing at Saint Elizabeth Hospital Medical Center, assistant director of review for Physician's Peer Review Organization, Community Mutual Blue Cross and Blue Shield program coordinator, community education coordinator for DACAS home health care, and discharge planner for Western Reserve Health Care Systems.  Attorney Lee has written papers and lectured on various medical and legal topics to a number of professional and community organizations.

### 7. Whether the fee is fixed or contingent weighs in favor of adjusting the lodestar calculation upward.

Ohio case law states that the existence of a contingency fee agreement is one factor to consider when a court determines a reasonable amount of attorney fees to award with punitive damages. *Bittner*, 58 Ohio St. 3d 143; Rule 1.5 of the Rules of Professional Conduct.  In *Kava v. Boesch*, the appellate court upheld a trial court's method for determining the payment of awarded attorney fees, noting that the trial court gave weight to the fact that the fee agreement between the appellant and her counsel was contingent on the result obtained rather than fixed. *Id.* at ¶ 15.  The court highlighted the fact that the trial court noted that, "the contingency concept is completely reasonable as the standard for compensation in this case."  *Id.* at ¶16.  In upholding the award, the court stated that it was clear that, "the trial court considered the factors set forth in Rule 1.5 and based its decision in no small part on factor (8) [whether the fee is fixed or contingent]." *Id.* at ¶18.  The court was unable to categorize such a decision as an abuse of discretion.  *Id.*

Furthermore, in *Galmish v. Cicchini*, the Ohio Supreme Court upheld an award of attorney fees which considered the contingency fee agreement as a factor. *Galmish v. Cicchini* (2000) 90 Ohio St.3d 22, 35.  The Defendant argued that the trial court had relied exclusively on the contingency fee agreement between the plaintiff and her attorneys. *Id.* The Ohio Supreme Court rejected this contention, stating that the trial court did not merely rely on the contingency fee contract, but specifically listed, considered, and applied the relevant factors set forth in the predecessor to the Ohio Rules of Professional

Conduct. *Id.* Such reference to the totality of the factors, including the contingency fee agreement, was not an abuse of discretion. *Id.* at 36. Thus, it is entirely appropriate to consider the contingency fee agreement in determining a suitable amount of attorney fees.

Plaintiff's counsel agreed to handle this litigation on a contingency fee basis. Contingency Agreement dated November 30, 2009, attached as **Exhibit 4**. It cannot be disputed that nearly all wrongful death cases are handled on a contingency fee basis. Thus, it should come as no surprise to Defendant Emeritus that Plaintiff's counsel was retained on a contingency fee basis. The Court must take this factor into consideration, and it is undoubtedly reasonable for Defendant Emeritus to be responsible for the amount of the contingency fee agreement, totaling $772,000.00.

### C. Plaintiff is entitled to litigation costs as part of the attorney fee award.

As articulated by the *Villella* Court, litigation costs should be considered when awarding attorney fees. 45 Ohio St.3d 36, 41. The Court of Appeals for the Sixth Circuit upheld an award of litigation expenses when said expenses were "necessary and reasonable to the litigation." *Compton v. Kolvoord*, 1993 U.S. App. LEXIS 10542, * 9 (unreported) (attached as **Exhibit 5**); see also *Hollingsworth v. Time Warner Cable* (1 Dist. 2006), 168 Ohio App.3d 658, ¶¶ 80-85 (stating trial court properly awarded plaintiff litigation costs of $17,301.82); *Parrish v. Machlan* (1 Dist. 1997), 131 Ohio App.3d 291, 297 (holding "[l]itigation expenses may also be awarded as part of punitive damages"); *Davis v. Sun Refining and Marketing Co.* (2 Dist. 1996), 109 Ohio App.3d 42, 60; *Ron Scheiderer & Assoc. v. City of London, Ohio* (12 Dist. 1996), Nos. CA95-08-022, CA-95-08-024, 1996 WL 3296, *7 (unreported) (attached as **Exhibit 6**) (entitled to paralegal and law clerk charges as attorney fees).

### D. Plaintiff has attached itemizations in the amount of $555,713.79 to assist the Court in its determination of the lodestar factor prior to the upward adjustments as detailed supra.

Attached as **Exhibit 1** is an itemization of the time spent by the Plaintiff's attorneys and the attorneys' support staff, with work product and attorney-client privilege redacted. As of September 9,

9

2011, the value of the amount of attorney time, including support staff, spent on Plaintiff's case totaled $483,698.50. Including litigation costs, listed on **Exhibit 1** and **Exhibit 7**,[5] the amount currently totals $555,713.79.[6]

### III.    Conclusion

For the reasons set forth above, counsel for Plaintiff respectfully requests an award of attorney fees against Defendant Emeritus in the amount of $772,000.00. Based upon the lodestar calculation and other factors that this Court must consider, the amount of $772,000.00 represents a reasonable amount of attorney fees for this litigation.

Respectfully submitted,

*/s/ Megan J. Frantz Oldham*
Lee E. Plakas (0008628)
Megan J. Frantz Oldham (0079378)
**TZANGAS, PLAKAS, MANNOS & RAIES, LTD.**
220 MARKET AVENUE SOUTH
EIGHTH FLOOR
CANTON, OH  44702
Telephone:     (330) 455-6112
Facsimile:      (330) 455-2108
Email:            lplakas@lawlion.com;
                       mfrantzoldham@lawlion.com
**Attorneys for Plaintiff**

### PROOF OF SERVICE

I hereby certify that on the 12th day of September, 2011, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Megan J. Frantz Oldham*
Megan J. Frantz (0079378)
**Attorney for Plaintiff**

---

[5] As shown in Exhibit 1, the amount of costs advanced by Tzangas, Plakas, Mannos & Raies, Ltd. was $14,291.03 ($7,506.04 has since paid by Dennis Freudeman) and as shown in Exhibit 8, the amount paid directly by Dennis Freudeman was $57,724.26. As such, the total litigation costs thus far are $72,015.29.

[6] Plaintiff is still expecting invoices from the court reporters who provided daily transcripts and real time testimony.