IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENNIS J. FREUDEMAN, etc. | ) | CASE NO. 5:09-CV-175 |
| | ) | |
| Plaintiff | ) | JUDGE DAVID D. DOWD, JR. |
| | ) | |
| vs. | ) | **OPPOSITION AND RESPONSE TO** |
| | ) | **PLAINTIFF'S BRIEF ON ATTORNEY** |
| THE LANDING OF CANTON, et al. | ) | **FEES AND COSTS ON BEHALF** |
| | ) | **OF DEFENDANTS** |
| Defendants | ) | |

Defendants, The Landing of Canton and Emeritus Corporation, by and through counsel,

hereby submit the following Opposition and Response to Plaintiff's Brief on Attorney Fees filed

with this Court on September 12, 2011. (Doc. No. 290.)   The attorney fees requested by Plaintiff

are unreasonable and inconsistent with controlling legal authority. The evidence in support of the

requested attorney fees award is insufficient as to permit the mandatory detailed review for the

purpose of considering the permissibility and relevance of the requested attorney fees, or

Affidavit in support of the claim that the hourly rates charged where in fact reasonable.  Finally,

Plaintiff has offered this Honorable Court no explanation, or evidence in support, for the purpose

of increasing the lodestar computation in this matter.   To permit Plaintiff's requested attorney

fees computation without permitting Defendants the opportunity to conduct discovery for the

purpose of challenging and discerning the evidence in support of Plaintiff's submitted attorney

fees, has resulted in irreparable prejudice to Defendants, and is an abuse of discretion.  Likewise,

the expenses Plaintiff now seeks to tax as costs are inappropriate, unreasonable and unnecessary

1

warranting rejection, or at a minimum, substantial reduction by this Court. Accordingly, this Court should reject and deny Plaintiff's insufficient attorney fees request and costs herein.

I.      **Defendants have been denied the opportunity to conduct discovery in order to challenge the indiscernible attorney fees itemization submitted by Plaintiff.**

On October 14, 2011, this Court denied Defendants request to conduct discovery for the purpose of challenging and discerning the evidence offered by Plaintiff in support of attorney fees. (Doc. No. 303.)   Defendants submit that the order of this Court denying Defendants the right to conduct discovery, has prevented Defendants the rightful opportunity to tender a viable defense to counter the attorney fees itemization and evidence in support submitted by Plaintiff herein. (See Doc. No. 290, Exhibit 1.)  This is an abuse of discretion for the reasons detailed hereafter.

As this Court is aware, the starting point for determining the amount of reasonable attorney fees is the "lodestar" amount, which is calculated by multiplying the number hours reasonably expended on ligation by the reasonable hourly rate.  *Hensley v. Eckerhart,* (1983), 461 U.S. 424, 437.  The party applying for an award of fees should exercise billing judgment with respect to hours worked.  *Hensley*, at 437.  Attorneys who seek fees have an obligation **"to maintain billing time records that are sufficiently detailed to enable Courts to review the reasonableness of the hours expended"** on the case.  Emphasis added.  *Wooldridge v. Marlene Industries Corp* (C.A. 6th 1990), 898 F.2d 1169, 1177.   In obtaining the number of hours expended on the case, the district court must conclude that the parties seeking the reward have <u>sufficiently</u> <u>documented</u> its claim. Emphasis added. *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307 v. G&M Roofing and Sheet Metal Company* (6th Cir.1984), 732 F.2d 495, 502.

2

"The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the Court to determine with a <u>high degree of certainty</u> that such hours were actually and reasonably expended in the prosecution of the ligation." Emphasis added.  *United Slate*, at 502.  Where the documentation is inadequate, the District Court should reduce the award accordingly.  *Hensley*, at 433.

Courts have reduced attorney fees due to insufficient billing descriptions, where the attorney did not maintain contemporaneous records of his time, or the nature of his work. *Keener v. Dept. of the Army* (M.D. Tenn. 1991), 136 F.R.D. 140, 147, affirmed by *Keener v. Dept. of the Army*, (C.A. 6th 1992), 956 F.2d 269.  Likewise, where billing records are lumped together with time entries under one total so that it is impossible to determine the amounts spent on each task a reduction of attorneys fees is appropriate.  *Cleveland Area Board of Realtors v. City of Euclid* (N.D. Ohio 1997), 965 F.Supp. 1017, 1021.

"If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted. It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." *Johnson v. Georgia Highway Exp., Inc.* (C.A. 5th 1974), 488 F.2d 714, 717 abrogated in part by *Blanchard v. Bergeron* (1989), 489 U.S. 87.

Considering the legal authority set forth above, it is readily apparent that the evidence in support of Plaintiff's request for attorney fees is deficient thereby preventing any meaningful

3

opportunity for Defendants to challenge said request.  Moreover, Plaintiff's lack of specificity prevents this Court from determining with a <u>high degree of certainty</u> the hours actually expended and devoted to this litigation.   Plaintiff's request for attorney's fee is improper because the attorney fees claimed herein consists of duplicative charges, attorney fees claimed for work constituting paralegal functions, implausible billing descriptions and upwards of six individuals billing for non-descript "trial preparation" and "trial appearance.[1]"

Specifically, a review of Exhibit 1 (Doc. No. 290) attached in support of Plaintiff's requested attorney fees, reflects a woefully deficient billing record replete with evidence of double billing, deficient billing, indiscernible billing descriptions, and billing for time which could not have been incurred on the dates reflected in Plaintiff's attorney fee itemization and billing statement.   For example, the following deficiencies are but a few of the multiple inadequate billing records submitted by Plaintiff:

- 3/31/09: Conference with attorneys billed by LEP in the amount of **.9 hrs.** 3/31/09 Conference with attorneys billed by MJF in the amount of **.6 hrs.**

- 5/6/10: Office conference billed by MJF in the amount of 1.3 hrs; **notably no other attorney billed for a conference with MJF on 5/6/10.**

- 9/9/10: Court appearance billed by LEP in the amount of **4.2 hrs.** 9/9/10: Court appearance billed by MJF in the amount of **3.7 hrs.**

- 8/22/2011: EHE, MJF, BAB, CSL and LEP appeared at court and KLM traveled to court to deliver docket entries.   MJF, BAB, CSL and LEP

---

[1]  Notably, Plaintiff's Brief addresses the fees related to the services provided by Lee Plakas, Megan Frantz Oldham, and Cheryl Lee. However, a review of Exhibit 1 reflects claimed fees related to services provided by at least twelve (12) different individuals.  Due to this Court's denial of Defendants' proposed discovery schedule, it is impossible for these Defendants to even ascertain the identity of the twelve (12) individuals to which fees are being sought as contained in Exhibit 1, what their relationship to the case might have been, what the education/experience level of each might have been, or even the necessity of services claimed to have been provided by each of these unnamed and unidentified individuals.

prepared for Trial. Duplicative total for services claimed equaled $15,076.50.

- 8/23/2011: EHE, MJF, BAB, CSL and LEP appeared at court. MJF, BAB, CSL and LEP prepared for Trial. Duplicative total for services claimed equaled $13,532.25.

- 8/24/2011: EHE, MJF, BAB, CSL and LEP appeared at court. KLM, MJF, BAB, CSL and LEP prepared for Trial. Duplicative total for services claimed equaled $12923.25.

- 8/25/2011: MJF, BAB, CSL and LEP appeared at court. DEB, KLM, MJF, BAB, CSL and LEP prepared for Trial. Duplicative total for services claimed equaled $11,445.00.

- 8/26/2011: MJF, BAB, CSL and LEP appeared at court. KLM, MJF, BAB, CSL and LEP prepared for Trial. Duplicative total for services claimed equaled $10,780.75.

- 8/27/2011: MJF, CSL and LEP prepared for Trial. Duplicative total for services claimed equaled $8,344.50.

- 8/28/2011: BAB, MJF, CSL and LEP prepared for Trial. Duplicative total for services claimed equaled $10,664.50.

- 8/28/11: Court appearance and trial preparation billed by MJF in the amount of 11.0 hrs. **Suspiciously, 8/28/11 was a Sunday**.

- 8/29/2011: BAB, MJF, CSL and LEP appeared at court and prepared for Trial. Duplicative total for services claimed equaled $13,485.00.

- 8/30/2011: BAB, MJF and LEP appeared at court. MCK, EJM, BAB, MJF and LEP prepare for Trial. Duplicative total for services claimed equaled $9,450.00.

- 8/31/2011: BAB, MJF and LEP appeared at court. MCK, EJM, MJF and LEP prepared for Trial. Duplicative total for services claimed equaled $8,931.50.

- 9/1/2011: BAB, MJF and LEP appeared at court. DEB, KLM, BAB, MJF and LEP prepared for Trial. Duplicative total for services claimed equaled $9,438.50.

- 9/2/2011 BAB, MJF and LEP appeared at court. KLM, MCK and MJF worked on or prepared for Trial. Duplicative total for services claimed equaled $7,108.

(Doc. No. 290, Exhibit 1.)

5

Considering the examples set forth above, the reliability and high degree of certainty required for an award attorney fees has not been met by Plaintiff herein. As depicted above, LEP and MJF claim to have both attended a conference with each other, and court appearance, however each entered time for said events with different time values.  Similarly, duplicative billing is rampant as related to the events leading up to trial and attendance at trial itself.  Most damaging, MJF claims to have devoted 11 hours to **trial** and **appearance** at Court on August 28, 2010, **when in fact August 28th was a Sunday.**  In conjunction, MJF went onto claim appearance at trial and preparation for August 29, 2011, as such, any contention that the entry was entered in error, or for the incorrect date, is without merit.

In addition to the above discrepancies, four (4) individuals claim to have attended at Mock Jury Trial on May 21, 2011, including fees incurred related to the preparation for the actual Mock Jury Trial.  Simply put, attorney fees for four (4) individuals to prepare and attend a Mock Jury Trial are inappropriate.  As detailed in Plaintiff's Exhibit 1, the following charges related to said Mock Jury Trial are not sufficiently descriptive as to determine what services were actually performed and said fees are absolutely duplicative:

- 5/16/2011: LEP and MJF prepared for the Mock Trial.  Fees totaling $792.00.

- 5/17/2011: MJF, CSL and EHE prepared for Mock Trial.  Fees totaling $2,357.00.

- 5/19/2011: MJF, LEP and CSL prepared for Mock Trial.  Fees totaling $5,046.00.

- 5/20/2011: LEP, MJF and CSL prepared for Mock Trial.  Fees totaling $6,621.00.

- 5/21/2011: EHE, LEP, MJF and CSL prepared and appeared at the Mock Trial. Fees totaling $5,730.

6

Similarly, Plaintiff claims that over 4,400 pages of medical records were reviewed and evaluated.  (Doc. No. 290, p. 5.)  However, a review of Plaintiff's Exhibit 1 reflects that three (3) different individuals reviewed the same medical records on multiple occasions.  Moreover, some entries do not indicate what records were in fact reviewed and merely stating in cursory fashion "review records".  For example, Exhibit 1 reflects the following:

- 12/7/2007: KLM Reviewed records *** (Select Specialty Hospital at MMC)***. 1.80 hrs.

- 7/23/2008: KLM Reviewed records rec'd from The Landing of Canton 1.70 hrs.

- 1/13/2009: KLM Reviewed records received from Affinity Medical Center ***.70  hrs.

- 1/19/2009:  KLM  Reviewed  records  rec'd  from  St.  Luke's  Lutheran Community ***. 1.10 hrs.

- 4/11/2009: CSL Review medical records - Altercare, Affinity & St. Luke's 6.60 hrs.

- 4/12/2009: CSL Review The Landings records.  ***. 8.10 hrs.

- 5/28/2009: KLM Reviewed records of The Landing, ***. 1.30 hrs.

- 6/12/2009: KLM Reviewed medical expenses ***.  2.50 hrs.

- 6/12/2009: MJF Review medical records. .5 hrs.

- 6/14/2009: MJF Review medical records, *** 1.50 hrs.

- 6/19/2009: KLM Reviewed bills rec'd from Affinity and The Landing at Nobles Pond.  *** .20 hrs.

- 6/21/2009: CSL Review medical records*** 1.80 hrs.

- 6/23/2009: MJF Review medical records from Dr. Kumar*** .40 hrs.

- 6/26/2009: MJF Review medical records from Affinity*** .40 hrs.

- 6/28/2009: CSL Review records .40 hrs.

- 7/31/2009: MJF Review medical records,*** .20 hrs.

- 1/28/2010: MJF Review records on Tramadol, *** 1.40 hrs.

- 2/3/2010: MJF Reviewed records from SeniorMed .20 hrs.

- 8/9/2010: KLM Review additional records received from The Landings of Canton and compare them to the records we have previously received from the Landings of Canton. ***. 3.70 hrs.

- 8/12/2010: KLM Reviewed MMC records ***.  Also began review of The Landings records ***.  2.00 hrs.

- 8/18/2009: MJF Review records *** .50 hrs.

- 5/10/2011: CSL Review medical records 2.50 hrs.

- 6/7/2011: MJF Review and scan medical records 1.20 hrs.

(Doc. No. 290, Exhibit 1.)

Based on the above examples, it is readily apparent the Plaintiff duplicated services related to medical record review.  In addition, it is impossible to determine which individuals actually conducted said record review, or for that matter which records were actually reviewed. The nondescript nature and deficient billing itemization prevents any type of viable review and certainly does not rise to the level that is required of this Court – that being "a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the ligation." *United Slate*, at 502.

Notably, there are numerous billing entries by attorneys in which a paralegal or clerical staff certainly should have billed for the services performed – <u>not attorneys</u>.  For example, MJF entered multiple billing claims for clerical services such as searching for flights, booking flights, searching for rental cars, and completing expense forms for reimbursement.  (See Doc. No. 290, Exhibit 1.)    In *Pirolozzi v. Stanbro*, 5:07-CV-798, 2009 WL 3624919 (N.D. Ohio Oct. 29, 2009), the district court held that a 75% reduction in plaintiff's counsel's time from 10.25 hours to 2.5 hours was warranted to account for inefficient use of time expended performing clerical tasks.  *Id., at 6.*

In *Pirolozzi*, the Court noted the following:

> The Supreme Court of Oklahoma has identified a useful list of
> common tasks performed by paralegals, including interviewing
> clients and witnesses, drafting pleadings and other documents,
> researching legal issues, researching public records, preparing
> discovery requests and responses, scheduling depositions,
> preparing notices and subpoenas, summarizing depositions and
> other discovery responses, coordinating and managing document
> production, organizing pleadings and trial exhibits, preparing
> witness and exhibit lists, preparing trial notebooks, preparing for
> the attendance of witnesses at trial, and assisting attorneys at trial.
> See *Taylor v. Chubb Group of Ins. Cos.,* 874 P.2d 806, 809
> (Okla.1994).

*Id.* at FN 7, citing *Communities for Equity v. Michigan High School Athletic Association,* (W.D.
Mich. 2008), 2008 WL 906031, 12. Therefore, all of the entries by attorneys where clerical staff
or paralegals should have performed the work must be reduced including service of subpoenas,
research, and record review, secretarial and ministerial tasks the like.  (Doc. No. 290, Exhibit 1.)

While the above examples highlight only a few, of the multiple, billing discrepancies
contained within Exhibit 1, Plaintiff has also submitted entitlement for services provided wherein
the itemized billing statement is devoid of any description whatsoever of the service provided.
Specifically, the following billing charges claim alleged services being provided without any
contemporaneous billing description:

- 10/24/08: KLM – **Description Blank**        .1 hr.
- 11/18/08: BAM – **Description Blank**       3.6 hrs.
- 1/13/10: MJF  – **Description Blank**       1.10 hrs.
- 1/25/10: MJF  – **Description Blank**       2.4 hrs.
- 4/27/11: KLM  – **Description Blank**       1.2 hrs.
- 8/22/11: KLM – **Description Blank**        .4 hr.

(Doc. No. 290, Exhibit 1.)

In addition, to the absent description of billing services noted above, Exhibit 1 similarly contains voluminous and multiple billing descriptions containing a mere one or two word description.  Descriptions which are by definition so legally deficient thereby preventing a genuine review of the claimed expense and fee by this Court, or ability to contest said claim by the Defendants.  For example, the following deficient billing descriptions are noted at Plaintiff's Exhibit 1:

4/5/08: LEP – "office work"

5/19/08: LEP – "office work"

6/3/08: LEP – "office work"

6/25/08: LEP – "office work"

9/23/08: MJF – emails

9/25/08: MJF – emails

10/30/08: LEP – "office work"

12/20/08: LEP – "office work"

3/11/09: CSL – review emails

3/29/09: MJF – emails

9/22/09: LEP – "research materials"

4/22/10: MJF – "phone call"

4/26/10: MJF – "phone call"

5/2/10: MJF – "phone call"

5/3/10: MJF – "phone call"

5/10/10: MJF – "phone call"

9/1/10: MJF – "phone call"

10/11/10: LEP – "office work"

5/4/11: MJF – "emails to and from"

5/6/11: MJF – emails

5/10/11: MJF – "phone call"

5/11/11: MJF – emails

5/11/11: MJF – emails (billed in the amount of 1.2 hrs.)

5/11/11: LEP – "office work"

5/13/11: JBW – "research"

5/13/11: MJF – "emails"

5/18/11: LEP – "office work"

5/18/11: MJF – "research"

5/25/11: JBW – "research"

5/27/11: MJF – "review"

5/27/11: CSL – "review"

5/31/11: CSL – "review"

6/23/11: LEP – "office work"

7/20/11: LEP – "office work"

7/26/11: LEP – "office work"

8/2/11: MJF – "research"

8/19/11: CSL – "research"

8/19/11: KLM – "prepare" (billed in the amount of 3.0 hrs.)

9/7/11: AMP – "research"

9/8/09: MJF – "meet"

7/26/11: MJF – "meet" (billed in the amount of 4.2 hrs.)

(Doc. No. 290, Exhibit 1.)[2]

---

[2] The examples set forth herein are merely snapshots of innumerable deficient, nondescript and indiscernible billing entries submitted on behalf of Plaintiff as contained in Exhibit 1 attached to Doc. No. 290.

Further, Plaintiff's Exhibit 1 (Doc. No. 290) is replete with billing notations referencing emails, letters and telephone calls exchanged between MJF and an unidentified individual/entity captioned only as **"o/c"**.   As an example, the following entries appear at Exhibit 1:

- 3/2/09: MJF – "review JE, email to o/c"
- 4/2/09: MJF – "review of letter from o/c"
- 8/18/09: MJF – "Phone call with o/c"

Approximately ½ of the pages constituting Plaintiff's Exhibit 1 contain reference to, and billing related to, emails, letters and phone call exchanged between Plaintiff's counsel and the unnamed and unidentified **"o/c"**[3].   It is impossible for Defendants to contest the billing statements offered by Plaintiff when the indiscernible and nondescript nature of Exhibit 1 prevents, at a minimum, the identification of **"o/c"**.

Consistent with controlling authority, "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the Court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the ligation." *United Slate*, at 502.  Where the documentation is inadequate, the District Court should reduce the award accordingly. *Hensley*, at 433.   In conjunction, there is no dispute that the evidence offered in support of Plaintiff's request for attorney fees is deficient and of no probative value as to permit this Court to determine with a "high degree of certainty" that the hours claimed were reasonably expended in the prosecution of this matter. Moreover, the detail provided by Plaintiff is so woefully deficient as to prevent Defendants any opportunity to contest the claimed fee.  One and two word descriptions such as "email", "phone call", "office work", and "research" are simply inadequate and certainly falls short of the requisite standard of

---

[3] In that this Court is considering an award of attorney fees, it is imperative that the Court, and Defendants, know the identity of "o/c" and what relation "o/c" has to this matter as to warrant an award of attorney fees.

higher certainty required for this Court to even consider an award of attorney fees. Likewise, claimed fees for services that are clerical and fees for appearance at trial on a Sunday demand that this Court reject the deficient attorney fee itemization submitted by Plaintiff in support herein. (Doc. No. 290, Exhibit 1.)

Accordingly, this Court should reject Plaintiff's attorney fees request due to the overt and replete billing discrepancies as duly noted above.

## II. Plaintiff has failed to set forth sufficient evidence weighing in favor of adjusting the lodestar calculation upward. [4]

Whether an upward adjustment is warranted is based upon the court's analysis of the twelve (12) factors set forth in *Johnson, supra.* Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson,* at 717-719. It is an abuse of discretion to not consider these factors and a meaningful review of a reasonable fee requires a record that reflects such consideration. *Johnson,* at 720.

Considering the above factors, and the facts in this case, it is clear that Plaintiff has failed to establish the necessity or the entitlement to an upward adjustment of the lodestar amount

---

[4] Defendants submit that Plaintiff's have failed to submit sufficient billing records permitting a mindful consideration of the requested attorney fees. Notwithstanding said objection, Defendants will address the lodestar assessment should this Court deem consideration of the same appropriate.

herein.  The instant matter constituted a typical negligence, wrongful death and Ohio Nursing Home Resident Bill of Rights action.  Specifically, Plaintiff claimed that the employees of Defendants were negligent in administering the incorrect medication resulting in the untimely death of the decedent.  Simply put, the basis of Plaintiff's claim was that a medication error occurred resulting in death.  These facts are not unique, novel and most certainly did not involve difficult questions as to consider an upward adjustment herein.

### A. The amount involved and the result obtained does not weigh in favor of adjusting the lodestar calculation upward.

Contrary to Plaintiff's assertions, this is not the type of 'exceptional' case that warrants an upward adjustment based upon controlling case law. Specifically, "[W]here a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee. **Normally this will encompass all hours reasonably expended on the litigation, and indeed <u>in some cases of exceptional success an enhancement award may be justified</u>**." Emphasis added. *Geier v. Sundquist,* (C.A. 6th, 2004), 372 F.3d 784, citing *Hensley, supra*. The results obtained in this case cannot serve as an independent basis for increasing the basic fee award. *Geier,* at 794.

"Upward adjustments of the lodestar figure are still permissible and are proper in certain rare and exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* (1986), 478 U.S. 546. (Internal quotations omitted). "The party seeking an enhancement bears the burden of showing the use of a multiplier is 'necessary to the determination of a reasonable fee.'" *Blum v. Stenson,* (1984), 465 U.S. 886.

"A reasonable fee is 'adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Bank One, N.A. v. Echo Acceptance Corp.,* (S.D. Ohio 2009), Case No. 04-CV-318, 595 F. Supp.3d 798. "Multipliers to the lodestar calculation are permissible in some cases of 'exceptional success.' *** In the majority of cases, however, the

13

quality of representation is 'reflected in the reasonable hourly rate." *Id.* at 802. (Internal citations omitted). The Southern District of Ohio stated further:

> Courts have used multipliers when a case is "pathbreaking and of great social import," when counsel "establishes a new cause of action," when counsel "endures public criticism," or when the case "results in a change in the jurisprudence of any of the issues litigated."

*Id.* at 803. (Internal citations omitted).

The Fifth Circuit in *Johnson* provided little analysis as to the effects of this factor on the court's determination of whether an upward adjustment was warranted or not. *Johnson,* at 718. Nonetheless, *Johnson* does require this Court to consider the "decision's effect on the law." *Id.* In this case, the jury's verdict will have no bearing on subsequent case law decisions as this matter was not a path breaking case of great social import, this case did not establish a new cause of action, and as detailed hereafter, this is the type of case which Plaintiff's counsel routinely handles.  Simply put, there will be no change in the jurisprudence due to the litigation of the issues involved in this matter. *Bank One, N.A.* at 803.

Plaintiff boasts in his Hearing Brief in support of Attorney Fees that the jury's verdict in this case "serves as a significant public interest and has the potential to have a far-reaching effect on those who own and operate assisted living facilities.  Plaintiff successfully challenged the way assisted living facilities are operated in Stark County – and should be awarded accordingly." (Doc. No. 290, p. 6).  However, at the heart of Plaintiff's argument lies the fact that this is a routine negligence and wrongful death action litigated daily throughout this State.  This is hardly an exceptional or rare case, because it merely involves a medication error, thereby negating any argument in favor of an upward adjustment. See *Pennsylvania, supra*.

14

Further, this is not the type of case where a significant amount was awarded as it is on par with similar cases of this type. See *Volpe v. Heather Knoll Retirement Village, Inc.*, Summit County Case No. CV-2008-01-0471, decided January 21, 2011, jury verdict for $1M in favor of Plaintiff <u>and Plaintiff's counsel herein</u>; attorney costs are pending. Frankly, this is a fairly typical nursing home negligence case. *Supra.*

Even where multi-million dollar verdicts have been awarded, there is not an automatic requirement to provide an upward adjustment of the fee. *Bank One, N.A.,* at 800. In *Bank One, N.A., supra,* the court awarded the plaintiff in excess of fifteen (15) million dollars. *Id.* The court denied counsel's request for an upward adjustment as the case was not particularly novel nor was it undesirable. *Id.* at 804. The court awarded counsel the lodestar amount as it "adequately compensate[d] the attorneys for their time, labor, skill and success" and in doing so, held in accordance with the "strong presumption that the lodestar figure – the product of reasonable hours times a reasonable rate – represents a 'reasonable fee.'" *Id.* Stated differently:

> When an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests. Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, **thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.**

*Id.* (Emphasis added).

Counsel for Plaintiff was obligated to perform to the best of their abilities and this amount is adequately reflected <u>presumably</u>[5] in the reasonable hourly rate and the amount of time reasonably expended in this case, leaving little room for enhancement as it would create a

---

[5] As noted below, Defendants object for the reasons stated herein to the claimed hourly rate submitted by Plaintiff.

15

windfall for Plaintiff's counsel.    Accordingly, Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

> **B.     The experience, reputation, and ability of the lawyers performing the services does not weigh in favor of adjusting the lodestar calculation upward.**

"[T]he special skill and experience of counsel *** are presumably fully reflected in the lodestar amount, and thus cannot serve as an independent bas[is] for increasing the basic fee award." *Geier,* at 794. It is well settled law that the lodestar amount takes into consideration a reasonable hourly rate and the reasonable number of hours expended by an attorney in litigation, and the product of these values constitutes the lodestar. *Hensley, Blum, Pennsylvania,* and *Geier, supra.* Further, there is a strong presumption that the lodestar figure represents a reasonable fee. *Bank One, N.A., supra,* citing *Pennsylvania, supra.* In the majority of cases, the quality of representation is reflected in the reasonable hourly rate. *Blum,* at syllabus paragraph 2(b).

Plaintiff asserts that the collective experience, reputation and ability of the lawyers performing services during the litigation of this matter warrants an upward adjustment of the lodestar calculation. (Doc. No. 290, p. 7).   Plaintiff provides *curricula vitae* of Attorneys Plakas and Frantz as well as a presentation of Attorney Lee's involvement and her qualifications. (See *Id.*). However, none of the evidence provided overrides the general presumptions that the lodestar calculation provides reasonable compensation and that the experience, reputation and ability of the attorney handling the matter is reflected in the hourly rate. *Blum, supra.*

When the Supreme Court of the United States was faced with the requested upward adjustment in *Blum,* the Court articulated its position that is ostensibly inapposite to Plaintiff's request herein. *Blum,* at 498. Specifically:

16

> There may be cases *** **where the experience and special skill of the attorney will require the expenditure of fewer hours than counsel normally would be expected to spend on a particularly novel or complex issue. In those cases, the special skill and experience of counsel should be reflected in the reasonableness of the hourly rates.** ***

> The "quality of representation," however, generally is reflected in the reasonable hourly rate. It, therefore, may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was "exceptional." *** [Without such evidence,] **an upward adjustment for quality of representation is a clear example of double counting.**

*Blum,* at 898-899. (Internal citations omitted; emphasis added).

In this case, Plaintiff has made **no demonstration that the number of hours expended in this matter was reduced due to the exceptional level of skill and experience in this matter**. (Doc. No. 290, p. 7). Instead, Plaintiff is requesting that his attorneys be compensated solely because of their experience, reputation and ability (See *Id.*), while failing to offer any evidence sufficient to contradict the general presumption that these factors have been already considered in the reasonable hourly rate calculation. *Blum, supra.* The requested hourly rates, which may only be charged when the attorney has the commensurate knowledge, skill and experience, have already been accounted for in the lodestar calculation; Plaintiff is therefore requesting that these factors be considered for a second time, a clear example of double counting, contrary to controlling authority. *Id.*

Accordingly, Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

C.  **A contingent fee agreement does not weigh in favor of adjusting the lodestar calculation upward in this case.**

Defendants agree that "[i]t cannot be disputed that nearly all wrongful death cases are handled on a contingency fee basis." (Doc. No. 290, p. 9). However, "[t]he Sixth Circuit has rejected any consideration of a contingency fee arrangement as a factor in the overall determination of a reasonable fee. *Bank One, N.A.,* at 803, citing *Hamlin v. Charter Township of Flint,* (C.A. 6th, 1999), 165 F.3d 426. The *Hamlin* decision was based upon the precedent of *United Slate, supra*. (Court is not bound by the presence of a contingency agreement but it may consider the agreement to determine the billing rate of plaintiff's counsel; the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel).

The Sixth Circuit summarized *United Slate* in *Hamlin* as follows:

> Rejecting consideration of the plaintiff's contingency fee arrangement as a factor in the overall determination of a reasonable fee, the court said, "the determination of a reasonable fee is to be conducted by the district court regardless of any contract between plaintiff and plaintiff's counsel." The court did note, however, that the contingent nature of the fee may be considered when calculating the reasonable hourly billing rate to provide an allowance for contingent risks assumed by the attorney. In other words, the reasonable hourly rate may be adjusted *upward* to account for the risk of non-payment inherent in a contingency fee arrangement.

*Hamlin,* at 438. (Internal citations omitted).

The Fifth District in *Johnson* similarly limited this factor's importance, wherein the court stated:

> The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case. *** It allows the award to be made to the prevailing party. Whether or not he agreed to pay a fee and in what amount is not decisive. Conceivably, a litigant might agree to pay his counsel a fixed dollar fee. This might be

18

> even more than the fee eventually allowed by the court. Or he might agree to pay his lawyer a percentage contingent fee that would be greater than the fee might ultimately set. Such arrangements should not determine the court's decision. **The criterion for the court is not what the parties agreed but what is reasonable.**

*Johnson,* at 718. (Emphasis added).

Much like Plaintiff's request above, Plaintiff is attempting to duplicate the effect of the contingency agreement factor in a disingenuous attempt to achieve an upward adjustment which is not warranted in this case. Plaintiff's request that this Court consider the contingency fee agreement is inappropriate as Plaintiff has already factored in the risk of this case in setting the hourly fee. (Doc. No. 290, p. 5, wherein Plaintiff requested $375.00, $240.00 and $195.00 per hour for Attorneys Plakas, Frantz and Lee, respectively). However, Plaintiff's upward adjustment request would result in an average rate of $482.50 per hour.  Further, when the amount sought ($772,000) is divided by the number of hours expended herein (approximately 1600 hours by LEP, MJF, CSL), Plaintiff cannot reasonably expect this Court to consider average billable rate of $482.50 per hour to be reasonable under any circumstances. **This assertion completely contradicts what Plaintiff has already presented as a "reasonable" hourly rate herein.** (Doc. No. 290, p. 5).

The Supreme Court of the United States has dealt with this "risk-enhancement" issue in *Pennsylvania, supra.* In conducting a cost benefit analysis of permitting lodestar enhancement, the Court adopted the skepticism of the District of Columbia Circuit and refused to uphold a fee enhancement based upon risk of not prevailing in the underlying matter. *Id.* at 724-725. The Court stated:

> [E]nhancing fees for risk of loss forces losing defendants to compensate plaintiff's lawyers for not prevailing against defendants in other cases. *** Such enhancement *** penalizes the

> defendants who have the strongest cases; and in theory, at least,
> would authorize the highest fees in cases least likely to be won and
> hence encourage the bringing of more risky cases, especially by
> lawyers whose time is not fully occupied with other work. **Because
> it is difficult ever to be completely sure that a case will be won,
> enhancing fees for the assumption of the risk of nonpayment
> would justify some degree of enhancement <u>in almost every
> case.</u>**  (Emphasis added.)

*Id.* at 725.

> Further:

> Indeed, it may well be that using a contingency enhancement is
> superfluous and unnecessary under the lodestar approach to setting
> a fee. The reasons a particular lawsuit are considered to be "risky"
> for an attorney are because of the novelty and difficulty of the
> issues presented, and because of the potential for protracted
> litigation. Moreover, when an attorney ultimately prevails in such a
> lawsuit, this success will be primarily attributable to his legal skills
> and experience, and to the hours of hard work he devoted to the
> case. **These factors, however, are considered by the court in
> determining the reasonable number of hours expended and the
> reasonable hourly rate for the lodestar, and any further
> increase in this sum based on the risk of not prevailing would
> result not in a "reasonable" attorney's fee, but in a windfall for
> an attorney who prevailed in a difficult case.**

*Id.* at 726-727. (Emphasis added).

Awarding the upward adjustment as requested would constitute a windfall for Plaintiff's

counsel as the average rate per hour is in excess of what has been posited by Plaintiff as a

reasonable hourly rate. See *Pennsylvania, supra.* Specifically, Plaintiff's lodestar calculation

includes claimed "reasonable" hourly rates of $375.00, $240.00 and $195.00 per hour for

Attorneys Plakas, Frantz and Lee, respectively (Doc. No. 290, p. 5), whereas the upward adjustment would provide an **average** hourly rate of $482.50 per hour.[6]

Accordingly, Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

> ### D.    The acceptance of the particular employment did not preclude other employment.

Plaintiff's counsel claims that they were "precluded from representing other clients during the time period of the trial and during significant periods of time leading up to the trial." (Doc. No. 290, p. 5).  Plaintiff claims that counsel "made this case a top priority throughout the pendency of the case."  (*Id.*)   This assertion is not plausible and is disingenuous.  First, Mr. Plakas, Ms. Frantz, and Ms. Lee claim to have worked approximately 1600 hours in handling this case through trial.  (Doc. No. 290, Exhibit 1.)  Plaintiff admits that this case was pending for over two and a half years.  Therefore, and considering Plaintiff's assertion, this Court would be forced to conclude that over a two and a half year period of time that these three (3) attorneys each worked a mere 500 hours.  This assertion is simply ridiculous.

More importantly, the facts before this Court establish that Plaintiff's counsel was recently engaged in a similar trial, involving similar facts, in the Summit County Court of Common Pleas, just months prior to the trial in this case – a case involving claims of negligence, wrongful death and violation of Ohio's Nursing Home Resident's Bill of Rights.    Specifically, Plaintiff's counsel was recently engaged in Trial in Summit County in Case No. 2008-01-0471. See *Volpe v. Heather Knoll Retirement Village*, *supra*.  On January 21, 2011, the Summit County

---

[6]  For purposes of comparison, the average hourly rate of the lodestar calculation is $344.75 ($550,000 divided by 1600 alleged hours expended by LEP, MJF and CSL), almost $150.00 per hour less than what Plaintiff is seeking with the upward adjustment.

Court entered judgment in favor of the plaintiff in the amount of $1,001,540.34. *Id*. The case in Summit County has been in litigation for over three (3) years. *Id*. The same period of time that this case has been in litigation and during that period of time that Plaintiff would lead this Court to believe that "other" employment was rejected.

Plaintiff's claim that counsel was precluded from representing other clients is disingenuous. It is also disconcerting that Plaintiff would claim that counsel made this case a top priority while engaged in Trial in another matter during the same period of time while representing numerous other clients. Clearly, the acceptance of this case did not preclude other employment and the court should not adjust the lodestar calculation upward.

Accordingly, this Court should reject the contention of Plaintiff related to forgoing other employment in calculating the lodestar adjustment. Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

### E.     The fee customarily charged in the locality for similar legal fees does not weigh in Plaintiff's favor.

Plaintiff's counsel has presented absolutely no evidence that the fee rates charged are reasonable. "The burden of proving the reasonableness of the requested attorney's fee 'is on the fee applicant.'" *Flores v. Toadvine*, 07-11288, 2009 WL 3621112 (E.D. Mich. Oct. 30, 2009), quoting *Blum v. Stenson,* 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

In *Harkless v. Husted*, (N.D. Ohio 2011), Case No. 1:06-CV-02284, 2011 WL 2149179 report and recommendation adopted sub nom., the Northern District of Ohio noted and recognized "The Law Firm Billing Rates and Billing Practices section of the OSBA report" in determining a reasonable hourly rate based on size of firm, location, and years of experience.

Specifically, the court in *Harkless* noted the median billing rate for Canton and Akron as follows:

- In Canton, Ohio, the city where Plaintiff's counsel's office is located, **the median billing rate is $188.00 per hour**. *Id*., at 19.

- In Akron, Ohio, the city where this case was litigated, **the median billing rate is $185.00 per hour**. *Id*.

Plaintiff's request for an hourly rate of $375.00 for Lee Plakas, $240.00 for Megan Frantz Oldham, and $195.00 for Cheryl Lee is not reasonable and is out of line with attorneys practicing in the Akron/Canton area. This Court should adjust Plaintiff's counsel's attorney fees to reflect, at most, the median billing rate of $185.00 per hour consistent with the decision in *Harkless, supra*. Moreover, this median rate should be enforced by this Court due to Plaintiff's failure to offer any evidence that their exorbitant attorney fees are in fact reasonable – specifically by way of Affidavit testimony.

Accordingly, Defendants request that this Court reject Plaintiff's assertion that the rates claimed for the services performed by Plaintiff's counsel herein were reasonable as to justify the award for attorney fees sought herein. Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

> **F.    The time limitations imposed by the client or circumstances does not weigh in favor of adjusting the lodestar calculation upward.**

Plaintiff claims that "numerous time limitations were imposed upon Plaintiff's counsel by both the parties and the Court." (Doc. No. 290, p. 7.) However, these time limitations were not unusual or atypical for a case alleging negligence, wrongful death and violation of the Ohio Nursing Home Bill of Rights. Plaintiff's counsel claims that this case was labor intensive because it was pending for over two and a half years, there was extensive discovery, depositions,

23

drafting pleadings and a ten day Jury Trial.  (*Id*.)   However, these circumstances are typical for litigation and trial involving the types of claims asserted herein.  The Court and the parties did not impose time limitations upon Plaintiff's counsel, nor does Plaintiff cite to any time limitation of significance as to warrant an upward adjustment.

Accordingly, there is no evidence for this Court to adjust the lodestar calculation upward and Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

### G.    Plaintiff seeks a windfall by seeking an upward adjustment of the lodestar amount.

Defendants submit that any reduction to the lodestar amount, whether it be by reducing the amount of hours spent in this case to reflect a reasonable expenditure of time on this case, or a reduction in the requested hourly rates as argued above, will nonetheless result in a greater disparity between what can be considered reasonable compensation and what Plaintiff is requesting.   Plaintiff asserts that an upward adjustment of the amount of attorneys fees in this case is warranted based upon the factors noted above, notably the contingency agreement entered into by Plaintiff and his counsel. However, such contentions are meritless, as demonstrated herein, and this request will only serve to force this Court to take continued leaps, while ignoring the underlying facts and evidence.

To illustrate this point, a conservative reduction in Plaintiff's lodestar amount of ten (10) percent ($55,000.00) due to deficient billing would lower the lodestar to $495,000.00. As discussed above, MFM, LEP and CLS have allegedly expended roughly sixteen-hundred (1600) hours over the course of this litigation. The average billable rate Plaintiff would seek if the

24

lodestar were $495,000.00 equates to approximately $309.00 per hour, **still $120.00 more per hour than the median billable rate for the Canton area.** See *Harkless, supra.*

Plaintiff's upward adjustment request is premised on the existence of a contingency agreement, which will, regardless of adjustments to the lodestar, mandate recovery of $772,000.00 (an average billable rate of $482.50 per hour) despite the fact that this amount is not reasonable for the multitude of reasons set forth above.

A conservative reduction in the lodestar amount clearly demonstrates that what Plaintiff now seeks, and what is reasonable compensation in this case, are vastly different.  The reduction to the lodestar amount expressed in the aforementioned illustration may be greater, depending upon what this Court deems reasonable. Assuming this Court was to reduce the hourly rates to reflect what is consistent with attorneys in the area, the lodestar amount would be further reduced and the upward adjustment amount would become further out of line with the amount of recovery that is reasonable in this case.

In seeking a reduction of Plaintiff's claimed attorney fees, Defendants rely upon the general presumption that the lodestar amount, the product of a reasonable rate and the reasonable number of hours expended in litigation, adequately compensates the attorney (*Bank One, N.A., supra*); Plaintiff must demonstrate what is reasonable or that an enhancement is necessary and Plaintiff has failed to do either in this case. *Blum, supra.*  Rather, Plaintiff has provided this Court with inflated rates and deficient billing itemizations in an attempt to obtain a windfall, contrary to what the Supreme Court of the United States held in *Pennsylvania, supra.*

Accordingly, Defendants request that this Court substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

### III.    Plaintiff has requested attorney fees premised on an incorrect interpretation of Ohio law.

Plaintiff's argument in support of attorney fees in this case is flawed and premised on an incorrect interpretation of Ohio law.  Plaintiff seeks attorney fees for claims where Ohio law does not provide for such an award or punitive damages, thereby making it axiomatic that attorney fees are impermissible. See *Pace Airlines, LLC v. Professional Settlement Services, LLC,* (N.D. Ohio, 2010), Case No. 5:08CV0771, Slip Opinion attached.

In *Pace,* the Northern district of Ohio stated that "the case law is clear[,] absent a statute allowing for attorney's fees as costs, they may be awarded as compensatory damages *only* where punitive damages have been awarded." *Id.* at 3. The court cited *Neal-Pettit v. Lahman,* (2010), 125 Ohio St. 3d 327, noting that this decision provided additional light on this subject. "What is clear from Ohio case law is that an award of attorneys' fees is an element of compensatory damages, but it can only be awarded where punitive damages have also been awarded." *Pace,* at 3.

Ohio's wrongful death statute, R.C. 2125.01, *et seq.* does not provide for attorneys fees as a compensable damage. Further, R.C. 2315.21, Ohio's punitive damage statute, does not include wrongful death in its definition of "tort action." See *Owensby v. City of Cincinnati,* (S.D. Ohio 2004), 385 F.Supp.2d 619. (Punitive damages are unavailable under Ohio's wrongful death statute). Accordingly, Plaintiff's claim for attorney fees regarding the wrongful death claim is without support and in fact, prohibited by the clear statement of Ohio law. See *Pace, supra.*

R.C. 2315.21(D)(2) states in part that, "[t]he court shall not enter judgment for punitive or exemplary damages in excess of two times the amount of compensatory damages awarded to the plaintiff from that defendant, as determined pursuant to division (B)(2) or (3) of this section." The Sixth Circuit has acknowledged the application of R.C. 2315.21 as to punitive damage

26

awards in federal court. *Magical Farms, Inc. v. Land O'Lakes, Inc.,* (C.A. 6th 2009), 356 Fed. Appx. 795.

In fact, the Southern District of Ohio stated that "[n]owhere does [R.C. 2315.21] authorize or otherwise sanction punitive damage awards to plaintiff's who succeed on such a claim. As a result, the Ohio Supreme Court has held that punitive damages are simply unavailable under Ohio's wrongful death statute." *Owensby,* at 624.

In *Wingrove v. Forshey,* (S.D. Ohio, 2002), 230 F.Supp.2d 808 the court acknowledged that claims for survivorship and wrongful death claims are separate and apart and belong to entirely different entities; the former belonging to the estate and the latter belonging to beneficiaries. The Fifth District of Ohio similarly noted the difference in a nursing home negligence case. *Grady v. Winchester Place Nursing & Rehabilitation Center,* (2009), 5th Dist. No. 08CA59, 2009 Ohio 3660.

Applying the above analysis, Plaintiff can only recover attorney fees on the claim permitting an award of punitive damages herein – **that being the claim for violation of Ohio's Nursing Home Resident's Bill of Rights. R.C. Chapter 3721**.  The claims for negligence and wrongful death, to which Plaintiff prevailed, do not provide for an award of punitive damages, and thus, an absolute prohibition against an award of attorney fees.  Therefore, the only claim which this Court can remotely consider in determining an award of attorney fees relates to the time incurred in the prosecution of the Bill of Rights claim and subsequent punitive damage award.  To permit an award of attorney fees related to claims that Ohio law absolutely forbids would result in reversible error.

Plaintiff's request for attorney fees in this matter must take into account the availability of fees for only those claims which attorney fees may be awarded, i.e. the Nursing Home Bill of

Rights Claim brought under R.C. Chapter 3721. The remaining claims for negligence and wrongful death simply do not provide a basis which punitive damages may not be awarded for the purpose of obtaining attorney fees, nor does the R.C. 2125.01, et seq. provide for attorney fees. In limiting Plaintiff's recovery in this matter, it is clear that this Court must adjust Plaintiff's lodestar calculation in this matter based on well established law. Plaintiff is only capable of receiving punitive damages, and thus attorney fees, as a result of prevailing on the Ohio Nursing Home Resident Bill of Rights claim pursuant to R.C. Chapter 3721 and attorney fees associated with the prosecution of these limited claims are only those available to Plaintiff.

Accordingly, this Court's award of attorney fees must be limited to only the attorney fees incurred in the prosecution of this isolated a limited claim providing for the availability of punitive damages, and, in conjunction attorney fees.

### IV.     Plaintiff's claimed "costs" are inappropriate and should be reduced by this Honorable Court.

Plaintiff has moved this Court to award a grand total of $84,464.59 in taxable costs under Federal Rules of Civil Procedure Rule 54.  The total amount of costs claimed by Plaintiff are not appropriate and in conflict with controlling authority.  As such, this Court should reject the costs claimed by Plaintiff herein.

The unsuccessful party in a lawsuit has the burden of showing circumstances to overcome the award of costs under Federal Rules of Civil Procedure Rule 54.  *Donahoo v. Ohio Department of Youth Services*, (N.D. Ohio 2002), Case No. 5:01 CV 1137, 2002 WL 31685727. In addition, the U.S. Sixth Circuit Court of Appeals has held that such an award of taxable costs will not be overturned absent an abuse of discretion in the determination by the district court that the costs were reasonable and necessary.  *Baker v. First Tennessee Bank National Association*, (C.A. 6th, 1998), 142 F.3d 431.  As such, the decision whether to allow costs is a matter left to

28

the sound discretion of the trial court. *Spalding & Evenflo Companies, Inc. v. Graco Metal Products, Inc.*, (N.D. Ohio 1992), Case No. 5:90 CV 0651, 1992 WL 109092.

Consistent with the above authority, Defendants submit that numerous costs claimed by Plaintiff are inappropriate and not recoverable under Federal Rules of Civil Procedure Rule 54. First, Plaintiff's claimed costs as related to Dr. Philbrick should be denied and rejected.  Dr. Philbrick was an expert witness retained by Plaintiff.  Plaintiff decided to not call Dr. Philbrick to testify at the time of trial.  As such, the costs associated with Dr. Philbrick are not recoverable.

Notwithstanding Dr. Philbrick's absence from trial, the costs related to his retention are absolutely unreasonable when compared to Plaintiff's claimed costs as related to his two expert witnesses called to testify at trial.  Herein, Plaintiff has submitted costs in the amount of $26,954.92 as related to the retention of Dr. Philbrick.  Plaintiff claims the following:

- Dr. Philbrick review of records - $2,500.00;
- Dr. Philbrick review of records, prepare report - $6,175.00;
- Dr. Philbrick review of records - $475.00;
- Dr. Philbrick review of records/prepare deposition - $3,750.00;
- Dr. Philbrick review of records - $475.00;
- Dr. Philbrick review of records - $1,900.00; and
- Dr. Philbrick prepared trial testimony and travel - $11,679.92.

(Doc. No. 290, Exhibit 7).

As stated, Dr. Philbrick did not testify at the time of trial.   Further, Plaintiff utilized two other expert witnesses at trial for the purpose of addressing the medical issues in dispute. Clearly, Dr. Philbrick was not a necessary or reasonable expense for the Plaintiff.  Plaintiff achieved a verdict in this matter without the necessity of Dr. Philbrick or his testimony.   In accordance, the $26,954.92 in costs claimed by Plaintiff and paid directly to Dr. Philbrick should not be taxed in this case under Federal Rules of Civil Procedure Rule 54.

29

In addition, Plaintiff claims multiple other expenses related to Dr. Philbrick apart from payments to this witnesses which are not taxable as costs.  Those expenses are:

- Travel expenses incurred by Megan Frantz to meet Dr. Philbrick - $18.00;
- Parking expenses submitted by Megan Frantz for meeting with Dr. Philbrick parking - $9.00;
- Expenses related to meals incurred by Megan Frantz when meeting with Dr. Philbrick meals - $15.89; and
- Travel expenses incurred by Megan Frantz to meet Dr. Philbrick - $37.73.

Next, Defendants submit that Plaintiff should be prohibited from recovering costs for the daily trial transcripts procured during the course of trial herein.  Costs should not be assessed for trial transcripts if said transcripts were procured merely for legal counsel's convenience.  *Tharo Systems, Inc. v. Cab Produkttechnik*, (N.D. Ohio 2005), Case No. 1:03 CV 0419, 2005 WL 1123595.  Expedited copies of daily transcripts are not taxable if obtained primarily for the convenience of legal counsel. *Spalding & Evenflo Companies, Inc.,* at 3.   Herein, Plaintiff has offered no explanation tending to support the necessity for daily trial transcripts as to support an award of costs for the procurement of the stated trial transcripts. Plaintiff's costs in the amount of $12,449.30 as related to the procurement of daily trial transcripts were for counsel's convenience and Defendants should not be compelled to bear this expense as a taxable cost.  (Doc. No. 293).

Third, Plaintiff's claimed expenses for computer research should not be deemed taxable a cost to be borne by Defendants.  This Court has held that computer charges are not taxable under Federal Rules of Civil Procedure Rule 54. *Spalding & Evenflo Companies, Inc.,* at 6. Plaintiff incorrectly claims costs under Federal Rules of Civil Procedure Rule 54 for computer research knowing this Court has rejected similar claims. Specifically, Plaintiff claims:

- Computer research - $172.95;
- Computer research - $73.12;
- Computer research - $28.94; and

30

- Computer research - $14.85.

(Doc. No. 290, Exhibit 1).  Such computer research expenses are not taxable in this matter.

Finally, Defendants submit that the expenses claimed by Plaintiff related to conducting a Mock Jury Trial in preparation for trial are not reasonable or necessary as to warrant taxing as costs.  (Doc. No. 290, Exhibit 7.)  Plaintiff has offered no explanation or evidence in support of this claim for costs. While Plaintiff may certainly believe that a Mock Jury was of benefit to preparing his case for trial, this type of expense is not reasonable or necessary.  Rather, this type of expense is an indulgence which Defendants should not be forced to bear.

Accordingly, Defendants submit that this Court should reject the costs claimed by Plaintiff herein. Plaintiff has not offered this Court sufficient evidence and authority to support the award of costs claimed herein and this Court should deny, or at a minimum, substantially reduce the expenses which Plaintiff claims as taxable costs to Defendants.

## CONCLUSION

For the reasons stated above, Defendants submit that Plaintiff has failed to set forth sufficient evidence for the purpose of ensuring, to a high degree of certainty that the claimed attorney fees were in fact incurred, are reasonable, or related to the prosecution of the claims herein. Accordingly, this Court should reject Plaintiff's claim for attorney fees for failure to satisfy the prerequisite mandates to support an award.   Likewise, the expenses Plaintiff now seeks to tax as costs are inappropriate, unreasonable and unnecessary warranting rejection, or at a minimum, substantial reduction by this Court.

In the alternative, should this Court find that the indiscernible attorney billing statement satisfies the high degree of certainty requirement, Defendants request that this Court

substantially reduce lodestar amount claimed by Plaintiff, and reject any claim for upward adjustment because the amount awarded does not weigh in favor of such an adjustment.

Respectfully submitted,

s/     *Keith Hansbrough*
NORRIS CUNNINGHAM (19312-49)
KIMBERLY S. ADAMS  (24830-49)
Hall, Render, Killian, Heath & Lyman P.C.
One American Square
Suite 2000, Box 82064
Indianapolis, Indiana  46282
Phone  (317) 633-4884
Fax     (317) 633-4878

KIRSTIN K. ULLMAN ()857210
Lewis Brisbois Bisgaard & Smith LLP
3812 Coconut Palm Drive, Suite 200
Tampa, Florida  33619
Phone  (813) 739-1900
Fax     (813) 739-1919

BRET C. PERRY  (0073488)
KEITH HANSBROUGH  (0072671)
Bonezzi Switzer Murphy Polito & Hupp Co. L.P.A.
1300 East 9th Street, Suite 1950
Cleveland, Ohio 44114
Phone  (216) 875-2767
Fax     (216) 875-1570
Email  bperry@bsmph.com
          khansbrough@bsmph.com
*Attorneys for Defendants*
*The Landing of Canton and Emeritus Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October 2011, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent via operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

s/ *Keith Hansbrough*
BRET C. PERRY  (0073488)
KEITH HANSBROUGH  (0072671)
*Attorneys for Defendants*
*The Landing of Canton and Emeritus Corporation*