DOWD, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Dennis J. Freudeman, | ) | |
| | ) | CASE NO. 5:09 CV 175 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| The Landing of Canton, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## I.  INTRODUCTION

This case was removed from the Common Pleas Court in Stark County to this Court on January 24, 2009.  The action was brought by Dennis Freudeman in his capacity as the executor of the estate of Dorothy V. Freudeman, deceased, and also as one of four adult children of Dorothy Freudeman.

Dorothy Freudeman was a resident of the Landing of Canton, an upscale residential facilty for elderly persons requiring supervision of the employees of the defendant Landing of Canton.  One of the services available, which Dorothy Freudeman had separately contracted for, was administering prescribed medications for the residents such as Dorothy Freudman.  The basic claim advanced by the plaintiff was that Dorothy Freudman had been provided an incorrect medication at the Landing of Canton which had the effect of lowering her blood sugar to a dangerously low level with severe negative consequences for the remainder of the life of Dorothy Fruedeman, who lived an additional fifteen months.

A jury trial commenced on August 22, 2011.  Following a two week bifurcated trial in which the plaintiff prevailed first on the issue of liability based on the jury answers to the attached interrogatories (ECF 273; Appendix 1), and then subsequently on damages as set forth in the jury's answers to additional interrogatories (ECF 275; Appendix 2).

## II.  PENDING MOTIONS

In addition to plaintiff's attorney fee application, plaintiff has moved for pre-judgment interest (ECF 318).  Defendants opposed the motion (ECF 323), and plaintiff has replied (ECF 326).

Defendants have filed a motion for judgment as a matter of law and for a new trial. ECF 317.  Plaintiff has opposed the motion (ECF 324), and defendants have filed a reply (ECF 328).

A.    <u>Defendants' Motion for Judgment as a Matter of Law and for a New Trial</u>

The defendants advance three reasons in support of their motion.  First, defendants argue that a new trial is warranted because the res ipsa loquitur jury instruction in this medication error case was improper on the grounds that there was no evidence that defendants had exclusive control and management over the alleged instrumentality of Dorothy Freudeman's injury, and because defendants introduced expert testimony as to alternative causes of the injury.

Second, defendants argue that judgment as a matter of law is warranted on plaintiff's claims for punitive damages and attorney fees because there was no evidence of any act or omission by defendants demonstrating malice or fraud as to the care of Dorothy Freudeman.

Finally, defendants argue that a new trial is warranted because the Court lacked jurisdiction as a matter of law to submit jury interrogatories numbers 1 through 4 to the jury for

the purpose of determining a distribution of an award to Dorothy Freudeman's children in a wrongful death claim.

1.    *Applicable Law*

Rule 50(b) of the Federal Rules of Civil Procedure allows a court to render judgment as a matter of law when a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.  Rule 50(b) permits the movant to include an alternative or joint request for a new trial under Rule 59.

The standard for granting a Rule 50(b) motion for judgment as a matter of law is that when viewing the admissible evidence in a light most favorable to the non-moving party, " a reasonable trier of fact could draw only one conclusion."  *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997) (quoting *Hill v. Spiegel, Inc.*. 708 F.2d 233, 237 (6th Cir. 1983)); *Radansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) ("The motion [for judgment as a matter of law] may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 598 (6th Cir. 2001)).   The district court may not reweigh the evidence  or assess the credibility of witnesses.  *Id.*

Under Rule 59(a), a new trial may be granted on all or any issues in an action in which there has been a jury trial for any of the reasons for which new trials have been granted in actions at law.  A new trial is warranted under Rule 59(a) when a jury has reached a seriously erroneous result evidenced by 1) the verdict being against the weight of the evidence; 2) the

3

damages being excessive; and 3) the trial being unfair to the moving parties, such as the

proceedings being influenced by prejudice or bias.  *Holmes v. City of Massillon*, 78 F.3d 1041,

1045-46 (6th Cir. 1996).  The motion should be denied "if the verdict is one that reasonably

could be reached, regardless of whether the trial judge might have reached a different conclusion

were he the trier of fact."  *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir. 1994) (citing *Unitd*

*States v. L.E. Cooke Co.,* 991 F.2d 336, 343 (6th Cir. 1993)).

       2.    *Res Ipsa Loquitor*

Defendants take issue with the jury instruction given to the jury regarding res ipsa

loquitor on the grounds that plaintiff  failed to establish that defendants had exclusive control

over medication at the Landing of Canton.   The res ipsa loquitor instruction was part of a larger

instruction regarding negligence.  The entire negligence instruction, provided to the jurors in

writing and read to the jury by the Court, is as follows:[1]

> Negligence.
> Plaintiff claims that Defendants were negligent and that Defendants' negligence
> was a proximate cause of Dorothy V. Freudeman's injuries and a proximate cause of her
> death.   If the Defendants were negligent, but their negligence did not cause Dorothy
> Freudeman's injuries or death, then Defendants are not liable for her injuries or death.
> Proximate cause and negligence are separate legal issues.  First I will instruct you
> on negligence, then I will instruct you on proximate cause.
> Negligence is the failure to use ordinary care.  Every person and business is
> required to use ordinary care to avoid injuring another person.  Ordinary care is the care
> that a reasonably careful person or business would use under the same or similar
> circumstances.
> Plaintiff asserts that Defendants' employees were negligent.  A business acts
> through its employees and is responsible for their conduct when they act or fail to act
> within the scope of their employment.  An act or failure to act is within the employee's
> scope of employment when it is, fairly and reasonably, an ordinary and natural part of the

---

[1] Because the Court provided the jury with a copy of the written instruction read to them
by the Court, the language that follows is taken from the written instruction as opposed to the
trial transcript, which contains non-material transcription discrepancies.

service or job to be performed by the employer.  It is not necessary that the employer tell the employee to do every act for which the employee is hired.  It is only necessary that the employer has the right to do so.

In deciding whether ordinary care was used, you will consider whether Defendants should have foreseen under the circumstances that the likely result of an act or failure to act would cause some injury.

The test for foreseeability is not whether a person or business should have foreseen the injury exactly as it happened to Dorothy Freudeman. The test is whether under all the circumstances a reasonably careful person or business would have anticipated that an act or failure to act would likely result in some injury.

Your analysis of negligence is this case must be made separately with respect to Dorothy Freudeman's injuries and her death.

One of the ways, but not the only way, that Plaintiff may establish negligence is by proving by a preponderance of the evidence that the administration of the medication alleged to have resulted in injury to Dorothy Freudeman was in the exclusive control of Defendants at the time of the injury and that the injury to Dorothy Freudeman occurred under circumstances which in the ordinary course of events would not have occurred if Defendants had exercised ordinary care.

First you must consider whether Plaintiff proved by a preponderance of the evidence that the medication alleged to have resulted in injury to Dorothy Freudeman was in the exclusive control of Defendants at the time of the injury.  Exclusive control means that the administration of the medication alleged to have resulted in injury to Dorothy Freudeman was not in the control, even partially, of another person.

Next you must consider whether the injury to Dorothy Freudeman occurred under circumstances where in the ordinary course of events the injury would not have occurred if the Defendants had exercised ordinary care.

No separate interrogatory for res ipsa loquitor was provided to the jury in the damages phase of the trial.  Jury Interrogatory No. 4, regarding negligence, read as follows:

> "If you answered yes to Jury Interrogatory No. 3,
> do you find by a preponderance of the evidence
> that the defendants were negligent with respect
> to the administration of anti-diabetic
> medication to Dprothy Freudeman?"

The jury answered this interrogatory "Yes."  *See* ECF 273

In negligence cases, plaintiffs must establish two elements in order for the doctrine of res ipsa loquitur to apply: i) the instrumentality  causing the injury at the time of the injury was

5

under the defendants exclusive management and control; and ii) the injury occurred under such circumstances that it would not have occurred in the ordinary course of events if ordinary care had been used.  *Hall v. Akron General Medical Center,* 2010-Ohio-1041 at ¶ 21.  While defendants agree that Dorothy Freudeman had a contract with defendants to administer medications prescribed to her, defendants argue that plaintiffs did not produce evidence to the jury that defendants had exclusive control over every anti-diabetic pill or substance that may have been present in the assisted living facility and could have caused Ms. Freudeman's injury.

However, even if there was no evidence of exclusive control, there was sufficient circumstantial evidence introduced by plaintiff from which the jury could have reasonably reached the conclusion that defendants were negligent even without the res ipsa loquitur instruction.  Such evidence included a disorderly medication cart in which residents' medications were in the wrong compartments, that the nurses were short of help and rushed when distributing medications, and the practice of "pre-pouring" medications for up to forty residents at a time.

Accordingly, the Court finds defendants' motion as to the res ipsa loquitor jury instruction to be without merit, and is denied.

3.  *Punitive Damages*

After finding for plaintiff in the liability phase, the damages phase of the trial followed, and the jury was provided with the following instruction, which was both provided to the jurors in writing and read to the jury by the Court, regarding punitive damages:[2]

---

[2] Because the Court provided the jury with a copy of the written instruction read to them by the Court, the language that follows is taken from the written instruction as opposed to the trial transcript, which contains non-material transcription discrepancies.

6

Punitive Damages.

The Plaintiff has asserted a claim against Defendants for punitive damages. The purpose of punitive damages is to punish the offending party and to make the offending party an example to discourage others from similar conduct in the future. If you determine that the Plaintiff is entitled to compensatory damages, then you may also consider whether the Plaintiff is entitled to recover punitive damages. You may not award punitive damages to a plaintiff if you have determined that such plaintiff is not entitled to compensatory damages. In addition, the fact that you have determined that the Plaintiff is entitled to compensatory damages, standing alone, does not mean that the Plaintiff is entitled to recover punitive damages. A determination to award punitive damages in this case is within your discretion subject to the instructions I shall give you.

To recover on the claim for punitive damages, the Plaintiff must prove, by clear and convincing evidence, that Defendants acted in such a way that there was a conscious disregard for the rights and safety of residents at The Landing of Canton who might be harmed by the wrongful administration of medication. It is important, however, for you to remember that your finding during the liability phase that there was the wrongful administration of medication does not by itself establish a conscious disregard for the safety of residents at The Landing of Canton who might be harmed by the wrongful administration of medication. The Plaintiff must establish something more than the existence of the wrongful administration of medication to Dorothy Freudeman. In other words, the Defendants must have possessed knowledge of the harm that might be caused by the wrongful administration of medication and consciously disregarded Dorothy Freudeman's safety.

As I just stated, Plaintiff must prove entitlement to punitive damages by clear and convincing evidence. This is a standard of evidence higher than the preponderance of evidence standard by which he must prove his claims. It is the highest standard of proof in a civil case. To be "clear and convincing" the evidence must have more than simply a greater weight than the evidence opposed to it and must produce in your minds a firm belief or conviction about the facts that must be proven in regard to punitive damages. If the evidence is not clear and convincing, as I have just defined that term, punitive damages are not warranted.

You may decide that the Defendants are liable for punitive damages if you find by clear and convincing evidence: (1) that the Defendants' acts or failures to act demonstrated malice or knowingly authorized, participated in, or ratified as principal or master, the actions or omissions of an agent or servant that demonstrate malice; and (2) that the Plaintiff has presented proof of actual damages that resulted from those acts or failures to act of the Defendants.

Under the law, "malice" includes: (1) a state of mind characterized by hatred, ill will, or a spirit of revenge; or (2) a conscious disregard for the rights and safety of another person that has a great probability of causing substantial harm.

"Substantial" means major or significant, and not trifling or small.

You will note that I have also provided an instruction (see below) and an interrogatory with respect to the issue of attorney fees. It is, however, improper on your

7

part to determine whether to grant punitive damages based solely on the fact that defendants might be required to pay attorney fees.  You should decide the issue of punitive damages separate and apart from the issue of attorney fees.

Defendants argue that they are entitled to judgment as a matter of law on plaintiff's claims for punitive damages and attorney fees because there was no clear and convincing evidence of any act or omission by defendants demonstrating malice or fraud as to the care and treatment of Dorothy Freudeman, or of an hatred, ill will or conscious disregard for Dorothy Freudeman's safety.   "Plaintiff Freudeman had the burden of proof to affirmatively demonstrate through trial testimony that some deficiency existed at The Landing of Canton as to procedures, practices or training, which Plaintiff failed to do."  ECF 328 (Defendants' reply brief in support of its motion).

Under Ohio law, punitive damages are available for a violation of Ohio's Patient's Bill of Rights, which provides in relevant part: "[i]f compensatory damages are awarded for a violation of the resident's rights, section 2315.21 of the Revised Code shall apply to an award of punitive or exemplary damages for the violation."  Ohio Revised Code Section 3721.17(I)(2)(b)).  In addition, punitive damages are also available as part of plaintiff's survivorship claim even if that claim is coupled with a wrongful death claim.  *Estate of Beavers v. Knapp*, 175 Ohio App. 3d 758, 768-70 (2008); *Wofford v. City of Toledo*, 2010 WL 3746053 (N.D. Ohio) ("A claim for survivorship is one for the decedent's own injuries and is confined to his or her personal loss and suffering before he or she died.  *Estate of Beavers v. Knapp*, 175 Ohio App. 3d 758, 769 (Ohio App. 10 Dist., 2008).").

An award of punitive damages under both circumstances is governed by Ohio Revised Code Section 2315.21, which places the burden of proof on plaintiff to establish by clear and

convincing evidence[3] that the actions or omissions of defendant demonstrate malice or egregious fraud.[4]  "Because R.C. 2315.21 does not define malice, the Supreme Court of Ohio applies the definition of actual malice set forth in *Preston v. Murty* (1987) 32 Ohio St.3d 334, syllabus, to punitive-damage claims. . . . Thus, for purposes of punitive damages, malice is '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'  (Emphasis sic.)  *Preston* at syllabus."  *Estate of Beavers v. Knapp*, 175 Ohio App. 3d at 770.

Defendants argue in their motion that plaintiff presented no evidence to the jury that defendants' conduct could be characterized by the conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm, and therefore judgment as a matter of law is warranted on plaintiff's claims for punitive damages and attorney fees.

However, the Court finds that the record was replete with evidence from which a reasonable jury could  find for plaintiff on punitive damages.  This evidence includes but is not limited to testimony from multiple witnesses that medication errors with respect to residents other than Dorothy Freudeman had occurred in the past, the medication cart was disorderly, residents' medications could be found in other residents' compartment on the medication cart, when a resident's medication ran out the medication would be "borrowed" from other residents, nurses were understaffed and rushed to distribute medications on time, medications were pre-poured to save time, medication administration records were not completed contemporaneously

---

[3] Ohio Revised Code Section 2315.21(D)(4).

[4] Ohio Revised Code Section 2315.21(C)(1).

with the administration of medication, and that under such circumstances medication errors could - and did - occur.

Based on the evidence in the record, the Court finds that a reasonable jury could find that the defendants' practices at the Landing of Canton regarding the administration of medication - which included giving a resident another resident's medication - could be characterized as a conscious disregard for the rights and safety of other persons with a great probability of causing substantial harm if a resident received the wrong medication.

Accordingly, the Court finds that defendants' motion with respect to punitive damages is without merit and is denied.

4.       *Interrogatories Allocating Damages to Dorothy Freudeman's Children*

Defendants argue that they are entitled to a new trial because the jury was instructed by the Court to consider and award damages to each of Dorothy Freudeman's children, thereby usurping the authority of the probate court to allocate the jury award.  *See* Ohio Revised Code Section 2125.03(A).   However, the defendants never objected to the jury interrogatories allocating damages to each of Dorothy Freudeman's children.  Further, pursuant to Ohio Revised Code Section 2125.03(A), the probate court has the ultimate authority as to how the damages award is distributed and is not bound by the jury's allocation.

Accordingly, the Court finds that defendants' motion as to the jury interrogatories allocating damages among Dorothy Freudeman's children is without merit and is denied.

10

B.      Plaintiff's Motion for Pre-judgment Interest

1.      *Applicable Law*

In this diversity action, the issue of prejudgment interest is governed by Ohio law.  *Cliffs Sales Co. v. American Steamship Co.,* 2008 WL 3852138 at * (N.D. Ohio 2008)(citing *FDIC v. Firt Heights Bank, FSB,* 229 F.3d 528, 542 (6th Cir. 2000)("In diversity cases in this Circuit, federal law controls postjudgment interest but State law governs awards of prejudgment interest.")).  Ohio Revised Code Section 1343.03(C)(1) provides in relevant part:

> If, upon motion of any party to a civil action that is based on tortious
> conduct, that has not been settled by agreement of the parties,
> and in which the court has rendered a judgment, decree,
> or order for the payment of money, the court determines
> at a hearing held subsequent to the verdict or decision in the action
> that the party required to pay the money failed to make a
> good faith effort to settle the case and that the party to
> whom the money is to be paid did not fail to make a
> good faith effort to settle the case, interest on the judgment, decree,
> or order shall be computed as follows . . .

"Under Ohio law, an award of prejudgment interest must be made if the court finds 'that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.'  Ohio Rev. Code Ann. § 1343.03(C)(1) (Anderson 1993).  The party requesting prejudgment interest has the burden of proving that it made a good faith effort to settle and that the other party failed to make a good faith effort to settle."  *Clay v. Ford Motor Co.,* 215 F.3d 663, 672-73 (6th Cir. 2000).  That burden does not include the requirement to prove bad faith of the other party - lack of a good faith effort to settle should not be confused with bad faith. *Moskovitz, et al., v. Mt. Sinai Medical Center,* 69 Ohio St. 3d 638, 659 (1994).

11

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.  If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement." *Moskovitz, et al., v. Mt. Sinai Medical Center,* 69 Ohio St. 3d at 658-59 (quoting *Kalain v. Smith*, 25 Ohio St. 3d 157 (1986)); *Clay v. Ford Motor Co.,* 215 F.3d at 673 (citing *Kalain v. Smith*, 25 Ohio St. 3d 157 (1986)).

2.      *Analysis*

Plaintiff's argument in support of his motion primarily focuses on two of the four factors identified by *Moskowitz* as relevant for consideration when analyzing whether defendant failed to act in good faith.  First, plaintiff argues that defendants failed to evaluate their risks and potential liability because defendants had no expert to testify that, more probably than not, Dorothy Freudeman's non-responsive state was caused by something other than a medication error, and because defendants failed to give due consideration to Ms. Freudeman's pain and suffering and plaintiff's substantial injuries if defendants were found liable.  Second, plaintiff argues that defendants failed to make a good faith effort to settle the case.

In opposition, defendants argue that they rationally evaluated its risks and potential liability, noting that there was a complete absence of any direct evidence of a medication error, and that while its experts did not offer testimony as to causation to a reasonable degree of medical probability, defendants did offer expert testimony to rebut facts propounded by plaintiffs.  Further, defendants dispute that they did not attempt to resolve this case in good faith

12

and point out that a year before trial defendants accepted the Court's recommendation of $325,000 to settle the case.

Plaintiff's motion chronicles the offers and counteroffers that were made between plaintiff and defendants throughout this case, and there is no doubt that a very wide gap existed between the two sides' perceptions of the settlement value of the case.  Further, plaintiff contends that the substantial disparity between the defendants' highest offer - $325,000 - and the jury verdict of $1,193,000, is evidence that defendants did not act in good faith.[5]

At an informal hearing conducted by the Court on the parties' cross-motions for summary judgment - about one year before trial - the Court proposed a settlement value for this case of $325,000.  The Court ordered that the parties direct their acceptance or rejection of the Court's proposal to the Clerk's Office so that the Court would not have knowledge of each parties' response unless both sides agreed to settle.  At the time, the Clerk informed the Court that the case had not settled, but the Court was unaware until now as to whether one or both sides rejected the settlement proposal.  Defendants have disclosed as an exhibit to their opposition to plaintiff's motion for prejudgment interest their acceptance of the Court's proposed settlement of $325,000 on September 15, 2010.  *See* ECF 323-1.  Further, the Court notes that both parties engaged in further discussion with a mediator one week before trial at which time the defendants once again offered to pay $325,000 to resolve the case.

---

[5] *Ross v. St. Elizabeth Health Ctr.* 181 Ohio App. 3d at ¶ 64 ("[A]lthough it cannot be the only factor considered, a substantial disparity between an offer and a verdict is one factor that may be considered as demonstrating whether a party made a good-faith effort to settle." (quoting *Burton v. Slusher,* 2008 WL 4325911, at ¶ 102)).

With respect to the issue of whether defendants rationally evaluated its risks and potential liability in the case, plaintiff conceded throughout the case that there was no direct evidence that defendants had provided Dorothy Freudeman with incorrect medication which plaintiff alleged caused dangerously low blood sugar, brain damage, and ultimately her death.  Defendants advanced various theories as to the reason for her condition and offered experts to challenge facts offered by the plaintiff to prove his case.  However, the fact that defendants may have poorly predicted the outcome of the trial and were ultimately unsuccessful does not necessarily establish lack of good faith.  *Doyle v. Fairfield Machine Co., Inc.,* 120 Ohio App.3d 192, 223 (1997).

The issue of determining whether defendants failed to make a good faith effort to settle this case lies within the sound discretion of the Court.  *Moskovitz, et al., v. Mt. Sinai Medical Center,* 69 Ohio St. 3d at 347.  While plaintiff has asked for a hearing on its motion for prejudgment interest, the Court is so thoroughly familiar with this case that a hearing would not advance the Court's ability to determine whether defendants failed to act in good faith.

The parties do not dispute that plaintiff lacked any direct evidence to support their allegation that defendants gave Dorothy Freudeman incorrect medication and offered expert testimony to rebut facts advanced by plaintiff in support of their case.[6]  The issue came down to one of credibility, which was a determination made by the jury at the end of all the evidence.

The fact that the jury made its credibility determination in favor of plaintiff does not

---

[6] Defendants also offered the testimony of the emergency medical personnel who transported Dorothy Freudeman to the hospital from the Landing of Canton when she was found unresponsive, and who tested Dorothy Freudeman's blood sugar level on the way to the hospital. According to those test results, Dorothy Freudeman's blood sugar was significantly higher than the very low blood sugar level plaintiff argues was responsible for her unresponsive state.

14

mean that defendants lacked good faith in advancing their arguments to the contrary.  Further, defendants did not refuse to negotiate a settlement with plaintiff, though even if they had, that alone would not support a finding that defendants lacked good faith.  Defendants' settlement offers steadily increased, though not at a rate and amount acceptable to plaintiff.  And lastly, although previously unaware of this, the defendants agreed to accept the Court's six figure settlement proposal over a year before trial and before the Court had ruled on the pending cross motions for summary judgment.

After considering all of the factors relevant to a determination of good faith, the Court cannot reasonable conclude that defendants failed to make a good faith effort to settle the case. Accordingly, plaintiff's motion for prejudgment interest is denied.

### III.  PLAINTIFF'S APPLICATION FOR ATTORNEY FEES AND COSTS

This case was tried to a jury which determined that the plaintiff was entitled to compensatory damages and punitive damages.  Additionally, the Court submitted to the jury the question of whether attorney fees should be awarded if in fact the jury found that the plaintiff was entitled to punitive damages.  *Digital & Analog Design Corp. v. North Supply Co.*, (1992), 63 Ohio St.3d 657, teaches that the trial court must submit to a jury the issue of whether attorney fees should be awarded and with the additional instruction that the amount of attorney fees, if allowed, shall be determined by the trial judge.  During the damage phase of the trial, the jury responded affirmatively to an interrogatory asking the question of whether the plaintiff should be entitled to award of attorney fees.

15

Based on the jury's answer that the plaintiff was entitled to attorney fees, an application for attorney fees and costs have been filed by plaintiff's counsel (ECF 290 and 293). Defendants' opposed plaintiff's application (ECF 310), and plaintiff replied (ECF 314).

A.      Plaintiff's Argument in Support of Attorney Fees

Counsel for the plaintiff had entered into a conditional fee contract with the plaintiff which called for attorney fees at 40 percent of an award.  Against that background, plaintiff seeks an award of $772,000.00 in attorney fees, which is alleged to be equivalent to the contingency fee agreement that the plaintiff executed with plaintiff's legal counsel.   It is apparent that plaintiff, and not counsel for the plaintiff, will be the direct beneficiary of the attorney fee award as that amount will clearly be an offset from plaintiff's counsel's 40 percent share of the jury verdict.

In further support of plaintiff's request for attorney fees, plaintiff argues that the total of attorney fees in the amount of $772,000.00 is appropriate in light of the fact that the standard hourly compensation and costs over the three-year period without any lodestar adjustment would result in an award of attorney fees less than the amount of attorney fees to which counsel for the plaintiff are entitled based on the 40% contingency fee contract.

Plaintiff further contends that awarding attorney fees based a upward lodestar adjustment to achieve the contingency fee agreement is reasonable when the following factors are considered:

> • This case was in litigation for two years and seven months;
>
> • The difficulty of the case which required Plaintiff's counsel to overcome the rigorous defenses asserted by the three separate law

16

firms, who identified seven attorneys as counsel of record representing Defendant;

• Plaintiff's counsel received no compensation for services rendered during the three year period in which professional services were rendered;

• Plaintiff's counsel assumed the responsibility and risk of prosecuting Plaintiff's claims without any guarantee that they would be compensated for their professional services;

• Plaintiff expended over $550,000.00 in legal fees and expenses over the last several years, based on conservative hourly rate computations, before any upward adjustments warranted under lodestar principles;

• The complexity and novelty of the claims; and

• The public good that is likely to result from the case.

B.      Defendants' Opposition to Plaintiff's Attorney Fee Application

Counsel for the defendants have submitted a comprehensive brief in opposition to the plaintiff's application for an award of attorney fees.  In summary, defendants contest the amount of the hourly rates requested; contend that the 70 page record of hours claimed is incomplete; contend that the lawyers for the plaintiffs engaged in duplication of effort; contest the hours committed to a mock jury presentation,[7] and complain that the Court did not allow discovery to further contest the claims of plaintiff's counsel.

---

[7] While the Court has determined to approve plaintiff's attorney fee application with respect to attorney hours invested in the mock jury process, the Court will not approve of plaintiff's costs with respect to the mock jury.

C.      A Summary of the Plaintiff's Application for an Award of Attorney Fees

Plaintiff's itemization of attorney fees and costs, totaling 70 pages, is set forth in Exhibit 1 to plaintiff's brief in support of attorney fees.  ECF 290-1.  The summary indicates the identity of the attorney designating the time and total amount due for the time expended based on the identity of the "time keeper."  The application identifies numerous time keepers (apparently all lawyers) including plaintiff's lead counsel, Lee Plakas, Megan Frantz and Cheryl Lee.[8]

The application for attorney fees includes a claim for plaintiff's lead counsel, Lee Plakas, for 354.80 hours at the rate of $375.00 per hour.   The application for attorney fees also includes a claim for plaintiff's attorney Megan Frantz for 1,025.30 hours at the rate of $240.00 per hour. Finally, the application for attorney fees with respect to attorneys involved in the courtroom prosecution of the plaintiff's case includes a claim for attorney fees for Cheryl Lee for 252.70 hours at the rate of $195.00 per hour.

In sum, plaintiff moves for an award of attorney fees for Attorney Lee Plakas in the sum of $133,050.00, an additional award for Attorney Megan Frantz in the sum of $246,072.00 and an award for Attorney Cheryl Lee in the sum of $49,276.50.

---

[8] Plaintiff's application for attorney fees indicates that Attorney Lee's hours were limited to the medical and nursing care aspects of the litigation.  The application further indicates that Attorney Lee's experience, prior to graduating from law school at the University of Akron in 2000, included an extensive nursing career.

D.    Analysis

1.    *Attorney Hours and Rates - Lodestar Calculation*

Initially, in determining the lodestar calculation, the Court is required to determine whether the rate requested is justified.  Second, the Court is required to consider the question of whether the hours claimed are, in some form, duplicative.

It is defendants' contention that the total number of hours claimed by Attorney Plakas and Attorney Megan Frantz involve duplication of effort.  After reviewing the defendants' criticism of the hours claimed, the Court will reduce the hours claimed by Attorney Plakas from 354.8 hours to 345.8 hours, and the hours claimed by Attorney Frantz from 1,025.3 hours to 1000 hours.

However, the Court finds the hourly rate of $375.00 for Attorney Lee Plakas is justified by the materials submitted.[9]   The Court finds that the claimed hourly rate of $240.00 per hour for Attorney Megan Frantz should be reduced to $200.00 per hour. [10]  The Court further finds that the hours claimed by the plaintiff with respect to the work of Cheryl Lee are justified, but the Court reduces the hourly rate from $195.00 to $150.00.[11]

_____

[9]  Lee Plakas is an impressive trial lawyer.  He is prepared for his courtroom presentations.  He maintains an air of civility in the presence of the jury.  He is courteous to opposing counsel and the court.  A brief description of his legal success and recognition is attached as Appendix 3.  His claimed rate of $375.00 is justified.

[10]  Megan Frantz, a 2005 graduate from University of Akron School of Law, and still an associate in the law firm of which Attorney Lee Plakas is the managing partner, is an excellent lawyer but the claimed rate of $240.00 an hour for an associate only six years out of school, is excessive.  Therefore Court reduces the claim of $240.00 an hour to the rate of $200.00 an hour.

[11]  The fee application describes the claim for attorney fees for Attorney Lee as follows:
          Attorney Lee's hours were limited to the medical and nursing care aspects
of this litigation.  Her specialized knowledge was an efficient and effective

(continued...)

Additionally, the Court finds that the additional hours and amounts claimed by the other persons (time keepers) working in the plaintiff's law office in the sum of $55,300.00[12] shall be reduced by a factor of 50%.  Accordingly, the requested sum of $55,300.00 is reduced to $27,650.00.

In sum, the amounts awarded to plaintiff's counsel follows:

| | | |
|---|---|---|
| Lee Plakas | 345.8 hours x $375.00 per hour | $129,675.00 |
| Megan Frantz | 1,000 hours x $200.00 per hour | $200,000.00 |
| Cheryl Lee | 252.7 hours x $150.00 per hour | $ 37,905.00 |
| Other Unnamed Counsel | | $ 27,650.00 |
| Attorney Award before Adjustment | | $395,230.00 |

2.      *Upward Adjustment*

---

[11](...continued)
resource.  Attorney Lee graduated with honors from Youngstown State University, obtaining degrees in nursing and health care management.  Prior to graduating from law school at the University of Akron in 2000, Attorney Lee's nursing career included acute care nursing at Saint Elizabeth Hospital Medical Center, assistant director of review for Physician's Peer Review Organization, Community Mutual Blue Cross and Blue Shield program coordinator, community education coordinator for DACAS home health care, and discharge planner for Western Reserve Health Care Systems.  Attorney Lee has written papers and lectured on various medical and legal topics to a number of professional and community organizations.

The Court finds the claimed rate of $195.00 an hour for Attorney Lee, who took no active part during the trial, to be excessive and the court reduces the claim to $150.00 an hour.

[12] This figure is derived from the timekeeper totals listed on p. 65 of ECF 290-1, excluding the time totals of Attorneys Plakas, Franz and Lee.

In addition to calculating attorney fees based on hours reasonably expended and hourly rate, the Court may also determine if an upward or downward adjustment of attorney fees is appropriate based on certain factors.  In a diversity case such as this, attorney fees are governed by state law.  *Hometown Folks, LLC v. S & B Wilson, Inc.,* 643 F.3d 520, 533 (6th Cir. 2011).

Attorney fees may be awarded to a plaintiff who prevails on a claim of punitive damages, and the appropriate amount of the award rests within the sound discretion of the trial court. *Kava v. Boesch,* 2011 WL 486519 at ¶ 5 (citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558 (1994); *Bittner v. Tri-City Toyota, Inc.,*58 Ohio St. 3d 143, 146 (1991)).

After determining the lodestar figure, computed by multiplying the number of hours worked on a case by a  reasonable hourly rate, the trial court may modify that number by applying the factors listed in Rule 1.5 of the Ohio Rules of Professional Conduct.  *Kava v. Boesch,* 2011 WL 486519 at ¶ 6 (citing Sup. R. Rule 71 ("Attorney fees in all matters shall be governed by Rule 1.5 of the Ohio Rules of Professional Conduct.")).

Ohio Rule of Professional Conduct 1.5 provides that lists eight factors to consider in determining the reasonableness of attorney fees.  Those factors are as follows:

(1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)  the fee customarily charged in the locality for similar legal services;

(4)  the amount involved and the results obtained;

(5)  the time limitations imposed by the client or by the circumstances;

(6)  the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8)  whether the fee is fixed or contingent.

In this case, the Court finds that a modest 25% upward adjustment of the lodestar fee award calculated in the previous section is appropriate based on the factors listed in Rule 1.5 for determining a reasonable attorney fee in this case for the reasons that follow.  A review of the docket in this case reveals that discovery was extensive and the case was vigorously litigated on both sides, resulting in significant expenditures of time on both sides.  Such a time-intensive case by necessity precluded the acceptance of some other work by plaintiff's counsel.

Additionally, counsel were retained by plaintiff on a contingency fee basis.  Defendants advanced a vigorous defense of this case and a successful outcome for plaintiff's counsel was far from guaranteed.  As a consequence, plaintiff's counsel took some risk that the significant amount of time expended in the prosecution of this case could have resulted in zero compensation.

However, plaintiff's counsel were very successful in this case despite the fact that there was no direct evidence of the alleged medication error.  The lack of direct evidence and discovery issues presented plaintiff's counsel with difficult, if not novel, legal issues and proof. Plaintiff's success in this difficult case was accomplished as a consequence of the demonstrable skills of the attorneys Plakas and Frantz.  The experience and demonstrated ability of both Lee Plakas and Megan Frantz in this contentious lawsuit, the risk that plaintiff's counsel would not be compensated should they fail to prove their case, and the time-intense nature of this case

which limited plaintiff's counsel's ability to accept additional cases, justifies a modest upward adjustment of the lodestar amount.

Plaintiff's counsel argues that the attorney fees should be adjusted upwards in recognition of the contingent fee aspect of the contract between the plaintiff and plaintiff's counsel.  The Court finds that increasing the attorney fee award based upon the lodestar calculation to the amount of the contingency fee represented by the contract between the plaintiff and plaintiff's counsel merits consideration.  However, the Court concludes that an upward adjustment of the lodestar calculation increased by 25% is the appropriate adjustment after considering the factors under Ohio law for determining reasonable attorney fees.  Consequently, the total attorney fee award will be the sum of $494,037.50.

3.    *Costs*

The application for cost is set forth at pages 65 through 70 of ECF 290-1.

Counsel for the plaintiff seeks costs in the total sum of $84,464.59 as follows:

1)  $14,291.03:  the costs that at one point Plaintiff's counsel advanced on behalf of Plaintiff.  $14,291.03 is reflected on page 70 of Plaintiff's Exhibit 1 to Plaintiff's Hearing Brief on Attorney Fees, ECF 290.

2)  $57,724.26:  the costs that Plaintiff directly paid and is itemized in Plaintiff's Exhibit 7 to Plaintiff's Hearing Brief on Attorney Fees, ECF 290.  Such is not reflected in Plaintiff's Exhibit 1 because Plaintiff paid the invoices directly and as such, the costs were never inputted into Plaintiff's counsel's billing system.

3)  $12,449.30:  the costs that Plaintiff incurred after filing his Hearing Brief on Attorney Fees for the court reporter expenses, attached as Exhibits 1 and 2 to Supplement to Plaintiff's Hearing brief on attorney Fees, ECF 293.

23

In reviewing the application for costs, the Court mistakenly assumed the total costs bill was only for the sum of $14,291.03.  The Court then published an order requesting that counsel for the plaintiff support several aspects of the costs bill.  ECF 320.

On November 21, 2011, counsel for the plaintiff indicated that the Court had been mistaken in assuming that the costs bill was limited to the sum of $14,291.03 and then went on to justify the costs that the Court had challenged in its Order of November 16, 2011.  ECF 320.  The Court accepts the plaintiff's explanation for the challenged costs with the exception of the listing of the expert fee in the amount of $1,125.00.  The plaintiff indicated that that sum was for the fee of the mediator, Jack Liber.  In the Court's view, the costs of the mediator should not be charged to the defendants and the Court will reduce the requested allocation of costs in the sum of $14,291.03 by the sum of $1,125.00, so that the costs allowed with respect to the number one itemization of costs is the final sum of $13,166.03.

The second requested sum for costs of $57,724.26 is reduced by excluding the sum of $4,831.00 for the mock jury and $192.00 listed as the bond for the estate of Dorothy Freudeman.  In the Court's view, the defendant should not pay the costs of a mock jury.  The Court notes that the bill for costs includes fees paid to Dr. Philbrick.

The costs claimed with respect to Dr. Philbrick totals $18,179.92.  However, Dr. Philbrick did not testify.  Plaintiff's counsel contends that Dr. Philbrick did not testify based on defenses presented by the defendants.

The trial brief filed by plaintiff's counsel described the anticipated testimony of Dr. M. James Lenhard as follows:

24

> Plaintiff's expert, testimony will include Defendants' breach of the standard of care and causation of Ms. Freudeman's hypoglycemia and encephalopathy.

The trial brief also identified Dr. John Philbrick as a potential witness and to present testimony as follows:

> Plaintiff's expert, testimony will include Defendants' breach of the standard of care and causation of Ms. Freudeman's hypoglycemia and encephalopathy.

The explanation given for including as costs the sums paid Dr. John Philbrick is insufficient and the Court will not allow the costs with respect to Dr. John Philbrick in the sum of $18,179.92.

Consequently, the Court will award costs in the sum of $34,521.34 with respect to the second itemization of costs, initially in the sum of $57,724.26.

The third itemization of costs in the sum of $12,449.30 for court reporter expenses is allowed in its totality.

In sum, the Court awards costs to the plaintiff to be paid by the defendants in the total sum of $60,136.67.

## IV.  CONCLUSION

For the reasons contained herein: 1) defendants' motion for judgment as a matter of law and motion for a new trial is DENIED, and 2) plaintiff's motion for prejudgment interest and for a hearing is DENIED.

25

Further for the reasons contained herein, the Court awards attorney fees to the plaintiff in the total sum of $494,037.50, and costs to the plaintiff in the total sum of $60,136.67.

The Court will separately publish a Judgment Entry.

IT IS SO ORDERED.


  December 30, 2011                          *s/ David D. Dowd, Jr.*
Date                                        David D. Dowd, Jr.
                                            U.S. District Judge